**LOW v. NUNAN, Commissioner of Internal Revenue.**

No. 67.

Circuit Court of Appeals, Second Circuit.

March 13, 1946.

The facts as found by the Tax Court, may be summarized as follows: The tax-

payer and his wife have maintained an apartment in New York City since 1936, and lived there during the taxable year. In that year, taxpayer was one of 11 vice presidents of the Consolidated Edison Company of New York and was an officer in several of that corporation's affiliated companies. He usually spent five days a week at his office in New York City. As a vice president of the Consolidated Edison Company, taxpayer is in charge of industrial relations, personnel, and the medical bureau; also, he has considerable to do with public relations. His compensation from the affiliated companies of the Consolidated Edison system during the taxable year was in excess of $30,000.

The Hitchins Corporation is a family real estate holding company formed for the purpose of facilitating settlement of the estate of the taxpayer's parents, comprising a tract of approximately 9,000 acres of timberlands, on which are maintained reservoirs for impounding water for sale to hydroelectric plants; also electric generating plants are operated, water preservation work carried on, and the like. The corporation operated at net losses for each year from 1934 through 1940, and has never paid any dividends to its stockholders. The taxpayer and his wife own about 34% of the stock of the corporation. Taxpayer, as joint trustee for a brother, holds, in addition, about 21%. The taxpayer and his wife are officers of the corporation but serve without salary or other monetary compensation from the corporation, the taxpayer being president and treasurer in complete charge of all its operations. The corporation owns a large 14-room house (at Sabattis, New York, on the company's property) partially occupied by its five employees, and otherwise used by the taxpayer and his wife, and considered by them to be their legal residence. There, during 1940, they spent variously about 85 days (usually over week-ends) and 118 days, respectively, without reimbursing the corporation for their lodging or for approximately 612 meals; they entertained about 94 guests for whose 994 meals the taxpayer reimbursed the corporation. During 1940 taxpayer expended and claimed as a deduction in the joint tax return for that year—but did not charge against the corporation—the total sum of $1,513.80 for telephone calls, travel, entertainment, etc., comprising the following: Charges for about 82 telephone calls from New York City to the Hitchins property, $134.50; railroad and Pullman fares and miscellaneous charges for 28 and 12 round trips from New York City to Sabbatis for the taxpayer and his wife, respectively, $1,156.65, and five round trips for the taxpayer from New York to Albany to consult local authorities about construction of a proposed state road into the Hitchins property, $135.75; and the cost of travel by automobile to attend meetings of a local Chamber of Commerce organization near Sabattis where the taxpayer, as an officer of that organization, entertained other members and officers who were local businessmen but were not customers of the Hitchins Corporation, $86.90.[1]

The Tax Court held that none of these items was deductible under § 23(a)(1)(A) or (2), 26 U.S.C.A. Int.Rev.Code, § 23(a)(1)(A),(2).[2]

[1] The Hitchins property is distant from towns. Sabattis is a railway station three miles away. It is for the convenience of the corporation that meals and lodging are provided for the employees, free of charge, and it is necessary to make such provisions to keep employees there. Certain foodstuffs are grown on the property, including hogs, potatoes and vegetables. The pork is processed and the vegetables are canned. Mrs. Low raises some of the vegetables, planting and caring for them. She cans vegetables and attends to the curing of the pork. She supervises the running of the house when she is there.

[2] The pertinent statutory provisions read as follows:

"Sec. 23 (as amended by Section 121 of the Revenue Act of 1942). Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income,

J. Theodore Cross, of Utica, N. Y. (Francis C. Steates, of Utica, N. Y., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen. (Sewall Key, A. F. Prescott, and S. Dee Hanson, of Washington, D. C., of counsel), for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

or for the management, conservation or maintenance of property held for the production of income."

"Sec. 24. Items Not Deductible.

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—

"(1) Personal, living, or family expenses;

"(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

Treasury Regulations 103 provide in part as follows:

"Sec. 19.23(a)-1. Business expenses. Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, * * * "

"Sec. 19.23(a)-2. Traveling expenses. Traveling expenses, as ordinarily understood, include railroad fares and meals and lodging. If the trip is undertaken for other than business purposes, the railroad fares are personal expenses and the meals and lodging are living expenses. If the trip is solely on business, the reasonable and necessary traveling expenses, including railroad fares, meals, and lodging, are business expenses * * *

"(c) Only such expenses as are reasonable and necessary in the conduct of the business and directly attributable to it may be deducted. A taxpayer claiming the benefit of the deductions referred to herein must attach to his return a statement showing (1) the nature of the business in which engaged; (2) the number of days away from home during the taxable year on account of business; (3) the total amount of expenses incident to meals and lodging while absent from home on business during the taxable year; and (4) the total amount of other expenses incident to travel and claimed as deduction.

"Claim for the deductions referred to herein must be substantiated, when required by the Commissioner, by evidence showing in detail the amount and nature of the expenses incurred.

"Commuters' fares are not considered as business expenses and are not deductible."

"Sec. 19.23(a)-15 (as added by T.D. 5196, 1942—2 Cum.Bull. 96). Nontrade or Nonbusiness Expenses. (a) In general. Subject to the qualifications and limitations in Chapter 1 and particularly in section 24, as amended, an expense may be deducted under section 23(a) (2) only upon the condition that:

"(1) it has been paid or incurred by the taxpayer during the taxable year (i) for the production or collection of income which, if and when realized, will be required to be included in income for Federal income tax purposes, or (ii) for the management, conservation, or maintenance of property held for the production of such income; and

"(2) it is an ordinary and necessary expenses for either or both of the purposes stated in (L) above * * * The expenses, however, of carrying on transactions, which do not constitute a trade or business of the taxpayer and are not carried on for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income, but which are carried on primarily as a sport, hobby, or recreation are not allowable as nontrade or nonbusiness expenses.

"Expenses, to be deductible under section 23(a) (2), must be 'ordinary and necessary,' which presupposes that they must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income * * *

"The question whether or not a transaction is carried on primarily for the production of income or for the management, conservation, or maintenance of property held for the production or collection of income, rather than primarily as a sport, hobby, or recreation, is not to be determined solely from the intention of the taxpayer but rather from all the circumstances of the case, including the record of prior gain or loss of the taxpayer in the activity, the relation between the type of activity and the principal occupation of the taxpayer, and the uses to which the property or what it produces is put by the taxpayer * * *

"Sec. 19.24-2. Capital expenditures. Amounts paid for increasing the capital value or for making good the depreciation (for which a deduction has been made) of property are not deductible from gross income * * * "

FRANK, Circuit Judge.

■ 1. Some at least of the expenses, had they been paid or incurred by the corporation, would have been deductible by it as "ordinary" and "necessary" to its business within § 23(a)(1)(A). But we need not decide which of them, in those circumstances, would have had that character, for they were paid or incurred by the Lows. Certainly on the facts here, we cannot say that what was the company's business was also that of Low and his wife; nor do we think that they were engaged in a business which consisted of being the unpaid officers of the corporation. Accordingly, the expenditures were not made by them "in carrying on any trade or business." Cf. Deputy v. Dupont, 308 U.S. 488, 493–494, 60 S.Ct. 363, 84 L.Ed. 416; Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; New Colonial Co. v. Helvering, 292 U.S. 435, 442, 54 S.Ct. 788, 78 L.Ed. 1348. We reach that conclusion on our own. In addition, we have the determination of the Tax Court adverse to the taxpayer. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Commissioner v. Scottish American Co., 323 U.S. 119, 125, 65 S.Ct. 169; Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232; Commissioner v. Wilcox, 66 S.Ct. 546.

■ 2. Nor do we think that any of these items come within § 23(a)(2). True, Low and his wife "held for the production of income" their shares in the company; and it is immaterial that, at the time, they yielded no income.[3] But we think that none of the expenditures was "ordinary."[4] We believe that § 23(a)(2) must be read in the light of Deputy v. Dupont, supra, although it was decided before the 1942 amendment which added § 23(a)(2).[5] For there the Court assumed, arguendo,[6] that "conserving and enhancing" one's "estate" constituted a business within § 23(a), as it then stood, but held that the expenditures there in question, made by a substantial stockholder in a corporation for the corporation's benefit, were not deductible, because they were not "ordinary."[7] In the case of a stockholder, said the court, there may be deducted as "ordinary" only what can be placed "in the category of those items of expense which * * * a substantial stockholder in a corporation engaged in conserving and enhancing his estate would ordinarily incur"; the Court cited as typically "ordinary" such items as "rental of safe deposit boxes, cost of investment counsel or investment services, salaries of secretaries and the like." Stockholders—and especially those who, like the Lows, own considerably less than all of the stock of a corporation—when engaged in management, conservation or maintenance of their property in that stock, do not ordinarily incur or pay expenses such as those claimed to be deductible here.

■ 3. Taxpayer complains that the judge at the trial showed such impatience with taxpayer when testifying as to indicate prejudice. But most judges, being human, sometimes disclose impatience when witnesses are unduly repetitious or excessively detailed. Such displays of impatience should usually be restrained in the presence of a jury. But, in the absence of a jury, they are not to be taken as signs of improper bias.[8] We know that, when on the bench, we sometimes manifest, orally or otherwise, symptoms of boredom, but are nevertheless able to decide in favor of the party whose lawyer has taxed our patience, if his case is meritorious.[9]

4. We have considered other alleged errors which we regard as not worth discussing.

Affirmed.

---

[3] Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232.

[4] We pass the question whether, in addition, any of them is "directly connected with or proximately results from" the management, conservation, or maintenance of the shares of stock. Cf. Trust of Bingham v. Commissioner, supra, 325 U.S. at pages 373–374, 65 S.Ct. at page 1237. 1942–2 Cum.Bull. 430, 571.

[5] § 121 of the Revenue Act of 1942.

[6] Against the protest of two Justices; see 308 U.S. 488, 499, 60 S.Ct. 363, 84 L.Ed. 416.

[7] We refer to the second point of the opinion, found at 308 U.S. 488, 494–497, 60 S.Ct. 363, 84 L.Ed. 416.

[8] Buckley v. Altheimer, 2 Cir., 152 F.2d 502, 511. As to the distinction between proper and improper judicial prejudice, see In re J. P. Linahan, 2 Cir., 138 F. 2d 650.

[9] We do not mean to say that the lawyers for either side in the instant case bored us.