PETER AND NINA KLEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klein v. Commissioner
Docket No. 11395-80.
United States Tax Court
T.C. Memo 1982-724; 1982 Tax Ct. Memo LEXIS 22; 45 T.C.M. (CCH) 340; T.C.M. (RIA) 82724; December 16, 1982. Sidney Gelfand, for the petitioners. Geraldine *23 R. Eure, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Chief Judge: Respondent determined a deficiency of $12,295.40 in petitioners' 1978 Federal income tax. We must determine whether petitioners are entitled to a deduction for legal fees, travel costs, and miscellaneous expenditures pursuant to section 212 and, if so, in what amount. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Peter and Nina Klein, resided in New York, New York, at the time they filed their petition in this case. Petitioners, in 1978, used the cash-basis method of accounting. Blue Shore Development Company (Blue Shore or the corporation) is an Israeli corporation organized in 1962 or 1963. The corporation holds undeveloped land in Herzliya, Israel, on which it originally had planned to build a convention center and hotels. Due to differences of opinion between the *24 municipality of Herzliya and the Israeli government concerning the planning and development of the land, no construction has taken place. Blue Shore's 51-percent shareholder is a Netherland's trust, Beleggingsmaatschappij Mabemij N.V. (the trust). At all times relevant hereto, the largest interest in the trust was held by Aaron Gutwirth (Gutwirth). Gutwirth acted as sole trustee for approximately 10 years. Since August 19, 1963, the trust has held Blue Shore Stock, 50,088 shares, and certificates of indebtedness representing 268,329 Israel pounds in trust for Nina. Nina has never received any interest or dividends from Blue Shore. From 1970 until 1976, Peter attended informal annual or biannual shareholder meetings of Blue Shore in New York. In 1976, Peter heard rumors of a possible foreclosure against the corporation for its nonpayment of real estate taxes. Upon the advice of his accountant, Philip Trestyn (Trestyn), Peter hired Leon Charney (Charney), a lawyer. In 1977, Charney billed petitioners $1,202 for "disbursements re Israel trip." Petitioners' check to Charney in payment of this amount was dated December 30, 1977. In 1978, Peter, accompanied by Trestyn and *25 Charney, traveled to Israel. Peter hoped that his presence in Israel would "start the ball rolling" and supply the contacts and energy needed to breathe life into Blue Shore. In Israel, the three met with an architect, a former deputy prime minister, and the mayor of Herzliya to discuss whether Blue Shore could obtain the building rights required for construction. They met with the manager of and bookkeeper for Gutwirth's affairs in Israel to review Blue Shore's books and records and to discuss what concrete steps could be taken to obtain building rights and pay off the back taxes. Charney also conferred with Gutwirth's manager to discuss possible liquidation of a joint venture into which Blue Shore had entered which was thought detrimental to the corporation's interests. Finally, they spoke to Gabriel Cohen, a lawyer hired by Peter to research the question of a shareholder's liability for Israeli taxes in the event of Blue Shore's liquidation. In connection with the trip to Israel, the parties have stipulated that petitioners paid the following amounts in 1978: [2]
*26 Retainer for Charney
$15,000.00
Airfare to Israel and cab fare
for Charney
2,070.00
Hotel accomodations
for Charney
773.20
Legal fee of Cohen
224.00
Hotel accomodations for Trestyn
425.83
Hotel accommodations for Peter
531.21
$19,024.24
Nina's sister and mother also held interests in Blue Shore. [3] In connection with the expenditures listed above, petitioners were reimbursed $2,224.22 by by Nina's mother and brother-in-law, Paul Elkins. By check dated March 16, 1978, petitioners paid $1,038 to Hewig & Marvic, Inc., a company of which Peter was president. The words "Blue Shore" appear in the upper left corner of the check and petitioners' check register bears the notation "Airline Tickets." Neither Peter nor Nina were ever officers, directors, or employees of Blue Shore. Petitioners own mineral interests in Alabama from which they receive royalty income from Getty Oil Company (Getty) and other oil companies. In 1978, Peter, and two lawyers, Sidney Gelfand and Wallace Musoff, traveled to Alabama to discuss with Getty its plan for unitization of *27 the oil field and to negotiate lower extraction charges in determining the amount of royalties. By check dated May 8, 1978, petitioners paid Hewig & Marvic, Inc., $660. The check bears the notation "RE-AIRLINE TICKETS" in the lower left corner. In 1978, petitioners paid the following out-of-pocket expenses for taxis, postage, lunches, etc., in connection with Blue Shore and the Alabama mineral interests: Blue Shore
$120.10
Mineral interests
8.25
Blue Shore and mineral
interests
73.76
$202.11
OPINION We must determine whether petitioners are entitled to a deduction under section 212 for expenses incurred in connection with Nina's interest in Blue Shore. [4] A further question exists as to whether petitioners have substantiated certain of those expenditures and expenditures incurred in connection with their Alabama mineral interests. *28 Petitioners claim they are entitled to a section 212 deduction in the amount of $19,892.13. [5]
First, we will deal with the Blue Shore expenses. Petitioners argue that these expenditures are ordinary and necessary expenses paid for the production or collection of income or for the management, conservation, or maintenance of property held for the collection of income and, thus, are deductible under section 212(1) or (2). [6] Respondent, on the other hand, argues that the expenditures are not ordinary and necessary expenses because such expenditures (1) are not usual or customary for a shareholder with a small interest in a corporation, (2) were not reasonably or proximately related to the production of petitioners' income, and (3) were for the *29 benefit of Blue Shore and not petitioners. In addition, respondent argues that petitioners have not shown that the purpose of the expenditures or the motive of petitioners in making them was for the production of income or the maintenance of property held for the production of income. [7]
"Ordinary and necessary" nonbusiness expenses are deductible under section 212. To satisfy the requirements of section 212, expenses must be reasonable in amount and proximately related to the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Trust of Bingham v. Commissioner,325 U.S. 365, 370 (1945), Deely v. Commissioner,73 T.C. 1081, 1097-1098 (1980); Hewett v. Commissioner,47 T.C. 483, 487 (1967); *30 section 1.212-1(d), Income Tax Regs.As with business expenses deductible under section 162, nonbusiness expenses are deductible only if they represent an expense of the taxpayer himself rather than an expense of the corporation in which he holds stock or the trust of which he is a beneficiary. Deputy v. du Pont,308 U.S. 488 (1940); [8]Low v. Nunan,154 F.2d 261, 264 (2d Cir. 1946), affg. a Memorandum Opinion of this Court; Deely v. Commissioner,supra;Hewett v. Commissioner,supra at 487-488; Bautzer v. United States,36 AFTR 2d 75-5868, 75-1 USTC par. 9246, adopted 207 Ct. Cl. 1038 (1975). See also Erdman v. Commissioner,37 T.C. 1119, 1122 (1962), affd. 315 F.2d 762 (7th Cir. 1963). Although the line of demarcation between those expenditures which are currently deductible by a shareholder and those which are not may often be a shadowy one, [9] we believe that the expenditures involved herein fall on the side of nondeductibility. *31 Courts have consistently held that a shareholder may not deduct currently expenditures which relate to the business of the corporation. See, e.g., Deputy v. du Pont,supra (expenses incurred in connection with a corporation's employee stock purchase plan); Low v. Nunan,supra (travel expenses, entertainment, and telephone calls); Rand v. Commissioner,35 T.C. 956 (1961) (compensation paid to corporate officer); Perlman v. Commissioner,27 T.C. 755 (1957), affd. 252 F.2d 890 (2d Cir. 1958) (forgiveness of corporate debt); Estate of Steckel v. Commissioner,26 T.C. 600, 607 (1956), affd. per curiam 253 F.2d 267 (6th Cir. 1958) (legal fees of a derivative suit); Bautzer v. United States,supra (legal and managerial services rendered to a corporation). Peter testified that his activities and those of Trestyn and Charney while in Israel concerned matters such as: (1) how building rights could be obtained so that Blue Shore's land could be *32 developed, (2) whether a joint venture between Blue Shore and another entity should be liquidated, and (3) how Blue Shore could generate money to pay its corporate tax liability. According to Peter, the main reason for the trip to Israel was "to meet * * * people personally and to start the ball rolling because [he] thought what was missing was any energy, any contact, anything going on." Peter's efforts were not directly or immediately related to the production of petitioners' income or the management of petitioners' income-producing property but rather to the production of Blue Shore's income and the management of Blue Shore's property. See, e.g., Deputy v. du Pont,supra;Hewitt v. Commissioner,supra; Bautzer v. United States,supra.The only benefit to petitioners was in the sense that "every service to a corporation inures ultimately to the benefit of its stockholders." Bautzer v. United States,supra.
Petitioners argue that they are entitled to a deduction because they were acting to benefit themselves, not the corporation, and because their status as minority shareholders distinguishes this case *33 from those where "a controlling shareholder and officer pays the expenses of a corporation so that tax benefits might be realized which the corporation, usually with substantial losses, could not obtain." [10] The Supreme Court has made it clear that no blending of the business of a corporation with the business of its shareholder is permitted; it matters not that no intimation of a tax-avoidance purpose is involved. Deputy v. du Pont,supra at 493-494. In any event, petitioners "must be taken to have intended the natural result of the services, which was to benefit the corporation first and thereby to benefit [themselves] as stockholder[s]." Bautzer v. United States,supra.
*34 Additionally, petitioners have failed to establish that the expenditures incurred in traveling to Israel were reasonable in relation to Nina's investment and were proxmately related to the production of income or the management of income-producing property. See pp. 8-9, supra. Nina's interest in Blue Shore was held in trust. The trust certificate stated: "The undersigned Beleggingsmaatschappij Mabemij N.V. hereby declares to hold [50,088 shares in, and certificates of indebtedness in the amount of 268,329 Israeli pounds of, Blue Shore] in trust for [Nina] * * * under the terms and conditions as laid down in the trust agreement, dated May 1963, in respect of these securities." Neither the trust agreement itself, nor any testimony revealing its terms, was introduced. Petitioners imply on brief that the trust was organized solely as a voting trust to consolidate the votes of a majority of the shareholders of Blue Shore and that, under the terms of the agreement, Nina was entitled outright to any dividends or interest paid in connection with her interest in Blue Shore. However, the record is devoid of any evidence to support petitioners' position. Under these circumstances, *35 it is unclear that Nina possessed an interest "held for the production of income" as that term is used in section 212. See Montgomery v. Commissioner,51 T.C. 410, 416 (1968), affd. on another issue 428 F.2d 243 (6th Cir. 1970). We also note that the record is unclear as to the value of Nina's interest in Blue Shore. Peter merely testified that he believed the stock was worth little or nothing and the bonds "had all of the value." Trestyn's testimony concerning the value of the certificates of indebtedness was similarly incomplete and confusing. Although he testified that the amount to be repaid on the certificates of indebtedness was linked to the cost of living in Israel, he presented no evidence as to the escalation in the cost of living from the time the certificates were issued to 1978. [11] The certificate holders' right to accumulated interest is also unclear. Peter testified that the corporation, if it ever became liquid, intended to pay accumulated interest and they "talked in terms of seven percent." Trestyn's report states merely that the "bonds were to receive agreed upon interest rates." *36 The cases relied on by petitioners in which shareholders have been permitted to deduct costs incurred for proxy fights, e.g., Surasky v. United States,325 F.2d 191 (5th Cir. 1963), and Graham v. United States,326 F.2d 878 (4th Cir. 1964), are distinguishable. In those cases, the taxpayers were exercising their rights asshareholders, e.g., the right to vote for corporate directors. Surasky is not to be interpreted as giving taxpayers a license to deduct any expenses that are remotely related to their investments, no matter how indirect the relationship may be. Rollins v. Commissioner,T.C. Memo. 1979-331, affd. per court order (5th Cir. Jan. 18, 1982). In light of (1) the fact that Peter's, Charney's, and Trestyn's activities in Israel related directly to the business of the corporation and (2) the confusing state of the record in respect of the terms of the trust, the value of Nina's interest in Blue Shore, and Nina's right to accumulated interest, we cannot conclude that petitioners have carried their burden of proving (see Rule 142(a)) that the expenses were incurred in the exercise of reasonable business *37 judgment in an effort to produce income or to manage income-producing property. See Surasky v. United States,supra at 195. We believe that the expenditures in the instant case are more akin to those incurred in respect of a stockholder's derivative suit. Because the derivative suit directly benefits the corporation, a shareholder's expenditures therefor must be added to the basis of his stock rather than deducted currently. Estate of Steckel v. Commissioner,26 T.C. 600, 607 (1956), affd. per curiam 253 F.2d 267 (6th Cir. 1958). A similar result is appropriate here. Petitioners paid Gabriel Cohen, a lawyer in Israel, $224 to do research on the liability of Blue Shore's shareholders for Israeli taxes in the event of a liquidation of the corporation. Petitioners are entitled to a deduction for Cohen's fee pursuant to section 212(3). [12] See Sharples v. United States,209 Ct. Cl. 509, 533 F.2d 550 (1976); Rev. Rul. 62-9, 1962-1 C.B. 35. In light of our conclusion that *38 Cohen's fee is the only Blue-Shore-related expenditure that is currently deductible under section 212, we need not decide whether petitioners have adequately substantiated the remaining Blue Shore expenditures. [13]
We next turn to the deductions claimed by petitioners in connection with their Alabama mineral interests. Petitioners assert that they expended $660 for airline tickets for Peter and two attorneys to travel to Alabama to meet with Getty. Respondent concedes that petitioners are entitled to a section 212 deduction for the travel to Alabama if we find the expenditure is substantiated in accordance with section 274(d). [14]
*39 Petitioners have submitted as substantiation their check to Hewig & Marvic, Inc. (the corporation of which Peter was president) in the amount of $660. The check bears the notation in the lower left corner "RE-AIRLINE TICKETS." Peter testified that the check was to reimburse the corporation for airline tickets. In order to meet the "adequate records" requirement of section 274(d), a taxpayer must maintain an account book, diary, statement of expense, or similar record which is prepared at or near the time of the expenditure. These contemporaneous records, in combination with certain documentary evidence (such as receipts or paid bills), must establish each element of an expenditure, i.e., amount, time, place, business purpose, and business relationship. Rutz v. Commissioner,66 T.C. 879, 882-883 (1976); section 1.274-5(c)(2), Income Tax Regs. Petitioners' cancelled check does not establish the time and place of the travel or the business reason for the travel.[15]
*40 Since petitioners have failed to substantiate each element by "adequate records," the deduction is allowable under section 274(d) only if petitioners substantiate the missing elements (1) by their own statement and (2) by other corroborative evidence sufficient to establish each element. Rutz v. Commissioner,supra at 883; section 1.274-5(c)(3), Income Tax Regs. Petitioners have presented no evidence as to the time or place of the travel to corroborate Peter's testimony. Accordingly, section 274(d) precludes petitioners' deduction. [16] See Gilman v. Commissioner,72 T.C. 730, 748-749 (1979). Petitioners paid $8.25 postage in connection with their mineral interests. It appears that respondent concedes on brief that this expense is deductible. In any event, petitioners' mineral interests constitute property held for production of income and they are entitled to a deduction for this amount pursuant to section 212. Petitioners made additional cash expenditures in 1978 of $73.76 in connection with both their mineral interests and Blue Shore. *41 Since we have held the expenditures in connection with Blue Shore are not currently deductible and those in respect of the mineral interests are, we hold that petitioners are entitled to a section 212 deduction of $36.88 for that portion of the expenditures relating to their mineral interests. Cf. Vest v. Commissioner,57 T.C. 128, 148-149 (1971), revd. in part and affd. in part on other issues 481 F.2d 238 (5th Cir. 1973). [17]
In order to reflect the foregoing, Decisin will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners claim they made additional expenditures in 1978 to which respondent has not stipulated. See note 5, infra.↩
3. The record is unclear as to whether these interests were held directly or via the trust.↩
4. Section 212 provides: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.↩
5. Blue Shore: ↩
Stipulated expenditures
(pp. 4-5, supra) $19,024.24
Billed by Charney in 1977
1,202.00
Incidental expenses
120.10
Airfare to Israel for
Trestyn and Peter 1,028.00
21,374.34
Less: Reimbursement
2,224.22
$19,150.12
Mineral interest: Airfare
$ 660.00
Incidental expenses
8.25
668.25
Incidental expenses for both
mineral interests and Blue
Shore
73.76
$19,892.13
6. Petitioners' argument in respect of Cohen's fee is based on subsection (3) of section 212 and is discussed on p. 15, infra.↩
7. Respondent does not contend that the expenditures were nondeductible personal expenses. Compare Kinney v. Commissioner,66 T.C. 122↩ (1976).
8. This case arose under the predecessor of section 162. Sections 162 and 212 (and their predecessors) are to be read in pari materia, United States v. Gilmore,372 U.S. 39, 45 (1963). Accordingly, the reasoning under section 162↩ and its predecessor is applicable to the issue herein. 9. See Stranahan v. Commissioner,T.C. Memo. 1982-151↩.
10. We note that not all the cases in which shareholder expenses have been held not currently deductible involve shareholders who own all or substantially all of the stock in their corporation. See, e.g., Deputy v. du Pont,308 U.S. 488, 490 (1940) (taxpayer was beneficial owner of 16 percent of the stock); Low v. Nunan,154 F.2d 261, 262 (2d Cir. 1946), affg. a Memorandum Opinion of this Court (taxpayer and his wife owned 34 percent and held an additional 21 percent as joint trustee); O'Connor v. Commissioner,T.C. Memo. 1954-90↩ (taxpayer had a one-third interest in the corporation).
11. Although Trestyn testified at trial that the repayment of the certificates was linked to the cost of living in Israel, we note that his report, introduced into evidence by petitioners, indicates that the certificates were "linked to the dollar exchange."↩
12. See note 4, supra.↩
13. See pp. 4-5 and note 5, supra.↩
14. Section 274(d) provides: (d) Substantiation Required. -- No deduction shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. * * *↩
15. We recognize that under section 1.274-5(c)(2)(ii)(b), Income Tax Regs., a written explanation of business purpose is not required in those cases where the business purpose of the expenditure is evident from the surrounding facts and circumstances. However, since the check only indicates that it was for "airline tickets," we are unable to deduce the business purpose from the surrounding facts and circumstances. See Rutz v. Commissioner,66 T.C. 879, 883↩ n. 4 (1976).
16. Trestyn testified only with respect to the trip to Israel.↩
17. We note that the parties have agreed that petitioners are entitled to income average in 1978 using the following figures: ↩
Year
Taxable Income
1974
$ 41,383
1975
107,252
1976
14,102
1977
43,406