ROBERT J. AND KAREN F. JOHNSTON, JR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnston v. Commissioner
Docket No. 10587-86.
United States Tax Court
T.C. Memo 1988-43; 1988 Tax Ct. Memo LEXIS 46; 55 T.C.M. (CCH) 62; T.C.M. (RIA) 88043; February 10, 1988. *46 Arthur J. Delaney and John W. Karr, for the petitioners. Wilton A. Baker, for the respondent. KORNER
MEMORANDUM FINDINGS OF *47 FACT AND OPINION KORNER, Judge: In his notice of deficiency respondent determined a deficiency in petitioners' 1982 Federal income tax of $ 28,241.64. After concessions, the issues for decision are: (1) whether petitioners are entitled to deduct $ 57,781 of expenses related to their yacht "Fantasy;" (2) whether petitioners are entitled to deduct $ 2,826 of depreciation from another asset; and (3) whether petitioners are entitled to $ 3,161 of investment credit. [1]
FINDING OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. When they filed their petition herein, petitioners Robert J. Johnston, *48 Jr. ("petitioner") and his wife, Karen F. Johnston, were residents of St. Michael, Maryland. They filed a joint Federal income tax return for 1982. Petitioner is a businessman. His business is marketing capital equipment costing over one million dollars, such as airplanes, computers, heavy construction equipment, and power generation equipment. Petitioner locates persons who need equipment and arranges financing for them. In 1980, petitioner's father retired from the Department of the Navy and formed a business called Advanced Marine Systems Associates, Inc. ("Marine Systems"). Marine Systems was retained by an Italian manufacturer of hydrofoil-equipped boats ("hydrofoils") to market the manufacturer's technology to the United States Navy and Coast Guard. In March 1982, Marine Systems contracted to market hydrofoils manufactured by the Italian firm. The contract provided that Marine Systems was to market the hydrofoils in the Caribbean Islands in return for a commission of four percent of the net sales price of each hydrofoil. Marine Systems in turn hired petitioner to sell the hydrofoils in "the Caribbean nations and most explicitly the United States Virgin Islands and *49 Puerto Rico." Petitioner was to receive a commission from Marine Systems of "30% of 4%" of the sale price of the hydrofoils. [2]
Petitioner visited a number of Caribbean islands in 1982 and settled on the United States Virgin Islands as the most logical place to begin selling the hydrofoils. An economic analysis performed by petitioner indicated that the hydrofoils could be operated profitably there. Petitioner and his father decided to take advantage of the opportunity to operate the hydrofoils profitably by forming a corporation -- Seaspeed, Inc. ("Seaspeed") -- to purchase (or lease) and operate the hydrofoils. Petitioner and his father owned 40 and 51 percent, respectively, of Seaspeed. [3] After Seaspeed was formed, petitioner began the process of obtaining the financing necessary to allow it to purchase the hydrofoils, obtaining government permits and concessions for its planned hydrofoil operations, and identifying facilities from which to operate the hydrofoils. *50 Petitioner met with the Governor of the Virgin Islands during 1982 and convinced him to help obtain financing for a high-speed hydrofoil transportation system. In October of 1982, the Governor wrote a letter to the United States Department of the Interior, which maintains a trust fund for the Virgin Islands, and requested funds to be provided for this purpose. The Governor gave the letter to petitioner, who then personally delivered it to the appropriate official at the Department of Interior in Washington, D.C.[4] A private lender ultimately agreed in March 1984 to finance the hydrofoils. As of the time of trial in June 1987, Seaspeed operated three hydrofoils between St. Thomas in the United States Virgin Islands and Puerto Rice. [5]
Petitioner purchased a yacht for $ 158,000 in 1981. The yacht was 50 feet long and had, inter alia, a large salon or main cabin (17 x 14 feet) and two cabins for sleeping. The yacht needed extensive repairs, and it was docked at a shipyard in Fort Lauderdale, *51 Florida, for repairs from the date petitioner acquired it through the end of 1982. In 1982, petitioner paid the following expenses related to the yacht: Repairs
$ 19,116
Insurance
2,864
Storage
372
Petitioner deducted the above expenses, as well as $ 35,429 depreciation expense from the yacht, on Schedule C of their 1982 return, which describes petitioner's business as "Leasing - Brokerage," in the form of a sole proprietorship. Petitioners also claimed $ 3,161 of investment tax credit on the return for "EDP equipment." Respondent disallowed the deduction of the repair, insurance, and storage expenses related to the yacht, $ 38,255 of depreciation, [6] and the $ 3,161 of investment tax credit. The yacht sank off the Bahamas in January of 1985, and was not salvaged. OPINION
Yacht Expenses
Petitioner argues that he is entitled to deduct the repair, insurance, and storage expenses disallowed by respondent on the grounds that *52 the expenses were ordinary and necessary business expenses. To be entitled to deduct the expenses related to the yacht under section 162, [7] petitioner must establish that the ownership and operation of the yacht was an ordinary and necessary expense of his business. [8]Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). An expense is necessary only if it is appropriate to a taxpayer's business. Welch v. Helvering, supra at 113; Sharon v. Commissioner,66 T.C. 515, 524 (1976), affd. 591 F.2d 1273 (9th Cir. 1978) cert. denied 442 U.S. 941 (1979). Expenses are necessary only to the extent they are reasonable in amount. Boser v. Commissioner,77 T.C. 1124, 1133 (1981), *53 modified 79 T.C. II, affd. in an unpublished opinion (9th Cir., Dec. 22, 1983). An expense for goods or services is unreasonable, and thus unnecessary, if the goods or services could have been secured much less expensively. Boser v. Commissioner, supra at 1133. Whether an expense is reasonable is a question of fact. Boser v. Commissioner, supra at 1133. Petitioner testified that he purchased the yacht to use as his office and lodging in the Caribbean. The record leaves us unconvinced that his business in the Caribbean, which he described as selling and obtaining financing for heavy capital equipment (perhaps including hydrofoils), warranted the expense of purchasing and maintaining the yacht for use as an office and lodging. Petitioner testified that he also worked in the Caribbean to organize the affairs of Seaspeed, a corporation in which he was a 40-percent shareholder. His testimony suggests that the majority of his time in the Caribbean was spent organizing Seaspeed's affairs rather than selling hydrofoils. Petitioner is not, of course, entitled to deduct expenses that he incurred on behalf of Seaspeed. *54 To be deductible as a business expense, an expense must be proximately related to a taxpayer's own business. Deputy v. duPont,308 U.S. 488, 493-494 (1940). A shareholder may not deduct expenses that proximately relate to a business in which he owns stock, rather than his own business. Deputy v. duPont, supra at 493-494; Low v. Nunan,154 F.2d 261, 264 (2d Cir. 1946), affg. a Memorandum Opinion of this Court. See Bullock's Department Store, Inc. v. Commissioner,T.C. Memo. 1973-249 (holding taxpayer may not deduct maintenance costs of, and depreciation on, airplane used by corporation of which he owns 99.9 percent of shares); Klein v. Commissioner,T.C. Memo. 1982-724 (holding taxpayer may not deduct cost of trip made on behalf of corporation in which h e held beneficial interest in shares). The record does not reveal the number or duration of petitioner's trips to the Caribbean to sell and obtain financing for capital equipment, and petitioner offered no evidence, other than his conclusory statements, that it was more economical to purchase, *55 maintain, and operate the yacht than it would have been to rent temporary quarters onshore during his sales visits. In addition, the record contains no evidence beyond petitioner's brief and general description of the yacht or the facilities it provided. It is unclear how the yacht's facilities were superior to those onshore. In sum, the record does not convince us that it was reasonable for petitioner to purchase, maintain, and operate the yacht in order to conduct his sales-brokerage business in the Caribbean. We accordingly hold that petitioners have failed to prove that the yacht expenses are deductible as ordinary and necessary business expenses, since he failed to establish that the yacht was acquired for use in his trade of business. [9]
Depreciation Expense
Respondent disallowed the deduction of all of the depreciation petitioners claimed for the yacht and part of the depreciation petitioners claimed for another asset. Petitioners argue that they are entitled to deduct the depreciation. *56 Petitioners bear the burden of proof. Welch v. Helvering, supra; Rule 142(a). The record contains no evidence regarding the $ 2,826 of depreciation at issue claimed on the unknown asset other than the yacht. We accordingly hold that petitioners have failed to prove that they are entitled to deduct that depreciation. Petitioners are entitled to the $ 35,429 depreciation expense deduction they claimed for the yacht only if they meet the requirement of section 167. That section requires, inter alia, that the property must be "used in the trade or business," meaning the trade or business of the taxpayer. Sec. 167(a)(1). Since we have concluded that petitioner has failed to show that the yacht was acquired for use in his trade or business, the claimed depreciation cannot be allowed. [10]
In addition, one of the requirements of section 167 is that the property have been placed in service. Sec 1.167(a)-10(b), Income Tax Regs. Property is not *57 placed in service until it is "in a condition or state of readiness and availability for a specifically assigned function * * *." Sec. 1.167(a)-11(e)(1)(i); Piggly Wiggly Southern, Inc. v. Commissioner,84 T.C. 739, 745-746 (1985), affd. 803 F.2d 1572 (11th Cir. 1986). The record indicates that the yacht here was placed in service, if at all, only after the year at issue. [11] Petitioner admitted that it needed "a lot of work" when he purchased it in 1981, and that it was docked for repairs at a shipyard from the date he acquired it through the end of the year at issue. The fact that the yacht was undergoing repairs for the full year of 1982 in a Florida shipyard convinces us that it was not yet "in a condition or state of readiness and availability," in the words of the above-quoted regulation, for use in anyone's trade or business. See Clemente, Inc. v. Commissioner,T.C. Memo. 1985-367. We accordingly hold that petitioners have failed to prove that they are entitled to a depreciation deduction for *58 the yacht during the year at issue.
Investment Tax Credit
Respondent determined that petitioners are not entitled to $ 3,161 of investment tax credit claimed on their return for the year at issue. Petitioners' return indicates that the credit was claimed on "EDP equipment" placed in service in 1982. Petitioners presented no evidence to substantiate their entitlement to a credit on the "EDP equipment," and we accordingly sustain respondent's determination. [12]
To reflect the foregoing, Decision will be made under Rule 155.
Footnotes
1. As a result of his determinations, respondent determined that petitioner's self-employment income for 1982 was $ 90,364, and that his correct self-employment tax liability was $ 3,029.40. Petitioners contested respondent's determination in their petition, and the matter remains at issue. This issue is a purely technical matter resulting from respondent's other adjustments to petitioner's income at issue herein, and will be disposed of in the Rule 155 computation. ↩
2. The hydrofoils sold for $ 6 million each. ↩
3. Another member of the Johnston family owned the remaining 9 percent of Seaspeed. The time when Seaspeed was formed is not clear in this record, but appears to have been in 1982 or later. ↩
4. The record does not establish whether funds were ever provided to Seaspeed by the Department of Interior. ↩
5. The record does not establish whether Seaspeed had purchased the hydrofoils. ↩
6. The $ 38,255 of depreciation disallowed includes the entire $ 35,429 claimed from the yacht and $ 2,826 of the $ 33,906 claimed from another asset, which was disclosed but not otherwise identified in the tax return. ↩
7. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
8. Petitioners do not seriously contend, and the facts do not indicate, that the yacht was held for the production of income within the meaning of sec. 212. ↩
9. We need not, and do not, decide here whether the expenses at issue were ordinary and necessary expenses of Seaspeed.↩
10. See note 9, supra.↩
11. The record does not establish that the yacht was ever used by petitioner in his trade or business before it sank in 1985. ↩
12. Petitioners state on brief that respondent stipulated to the purchase price and acquisition of the asset on which the credit was claimed. That statement is incorrect. Respondent did not stipulate to the purchase price and acquisition of the EDP equipment. Even if he had, such stipulation, without more, would not establish petitioner's right to an investment credit under sec. 38. ↩