RICHARD R. RUSSELL and WARENA W. RUSSELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Russell v. Commissioner
Docket No. 11023-85.
United States Tax Court
T.C. Memo 1989-207; 1989 Tax Ct. Memo LEXIS 207; 57 T.C.M. (CCH) 292; T.C.M. (RIA) 89207; May 1, 1989; As corrected May 1, 1989 Mark Townsend, for the petitioners. Monica Melgarejo, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By statutory notice dated January 30, 1985, respondent determined deficiencies in petitioners' Federal income taxes for taxable years 1977, 1978, and 1979 in the amounts of $ 10,395, $ 4,969 and $ 6,315, respectively. The sole issue for our consideration is whether petitioners properly claimed deductions for business expenses associated with activities organized by their controlled subchapter S corporation during each of the taxable years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Richard and Warena Russell, cash basis *208 taxpayers, resided in Fullerton, California, at the time of filing the petition herein. During the years in issue both petitioners were employed full-time by Pacific Telephone and Telegraph Company. During the years in issue, Richard Russell, a licensed pilot, flew a small private plane as a recreational activity. Petitioners determined that there were no travel agencies in their area which catered to recreational pilots. Therefore, in 1975, petitioners formed a partnership to provide travel services to recreational pilots. On July 14, 1976, the partnership was incorporated under the laws of the State of California as V.I.P. Pilots, Inc. [1] (VIP). At the time of incorporation, petitioners owned 225 of the 500 issued and outstanding shares. In October 1980, petitioners bought additional shares from other shareholders, increasing their holdings to 442 shares. At all times, Warena Russell was president, Richard Russell was vice-president, and both were on the Board of Directors. VIP filed a valid and timely election to be treated as a subchapter S corporation. VIP's main enterprise was arranging tours for recreational airplane *209 pilots. Once the pilots became VIP members they were entitled to participate in organized tours and trips to scenic or interesting locations. The pilots would fly their private airplanes to a tour site which offered enjoyable and interesting activities for tourists. [2] The tour would typically provide local airport accommodations for the members' airplanes, hotel accommodations and some meals, transportation from the airport to the hotel, parties and meetings for the participating members, and miscellaneous activities enjoyed throughout the trip. The tours typically took only two or three days, usually over a weekend. The fees for the tours were computed at cost per person or per couple plus 10 percent for unanticipated costs plus 10 percent for profit. The membership fee ranged between $ 10 and $ 12 during the years in issue. VIP offered between 10 and 13 tours a year with an average attendance of 40 members. At the start of the tour, petitioners would fly to the tour location before the *210 arrival of the members. While Richard Russell remained at the airport to greet the members, Warena Russell checked the hotel accommodations and planned activities. The tour would usually start off with a welcoming cocktail party at which petitioners would serve as hosts. Throughout the tour, Warena Russell would pay any tour costs which arose. Warena Russell performed the bulk of the designing and planning for the tours. She researched the possible sites for tours and negotiated with local airports, hotels and restaurants for the most favorable terms. In addition to organizing and supervising the tours, Warena Russell attended seminars and meetings to better learn the travel business, recruited new members and prepared and distributed information packets for prospective members. She was responsible for membership applications and correspondence, as well as publicity and promotion. Furthermore, as president of VIP she led the meetings and maintained the corporate minutes. In 1982, Warena Russell left Pacific Telephone and Telegraph Company and opened her own travel agency business. Some of her clients were members of VIP although as her business grew she developed more outside *211 sources of clients. In addition to offering tours, VIP published a bimonthly newsletter. The newsletter contained letters from members, articles about past tours, information about upcoming tours, and advertisements and articles of interest to recreational pilots. The newsletter was written primarily by Richard Russell who also prepared the newsletter for printing. Warena Russell solicited ads for the newsletter. Newsletters were mailed directly to members and distributed free of charge at airports which catered to recreational pilots. In 1978, Richard Russell opened a printing business as a sole proprietorship called Rapid Richard's Printing which provided for all of VIP's subsequent printing needs. By oral agreement it was established that VIP would not pay the personal expenses of the shareholders which were incurred in conducting or leading the tours. Similarly, the shareholders agreed that salaries would not be paid to VIP's officers until sufficient profits allowed. VIP neither declared nor paid dividends during the years in issue. Although the individual tours were usually profitable, VIP was not financially successful. The following is a summary of VIP's gross receipts *212 and net income for the first five years of operation: Year
Gross Receipts
Net Income
1977
$ 26,040
$ (517)
1978
47,367
5,610 1979
42,496
(2,741)
1980
40,607
416 1981
33,531
(3,983)
For the years in issue, petitioners claimed deductions for expenses associated with their participation in the VIP tours on Schedule C of their individual Federal income tax returns. Specifically, they deducted depreciation for their private airplane, costs incurred from participating in the tours which they led and the expenses of trips made to research potential VIP tour sites. Respondent disallowed all of these deductions. OPINION The sole issue for our consideration is whether petitioners are entitled to claim business expense deductions for the costs associated with their participation in the VIP tours. Section 162 [3] allows deductions for reasonable business expenses which are both ordinary and necessary. Deductible business expenses include "ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business." Sec. 1.162-1(a), Income Tax Regs. Whether an expense is ordinary or necessary is a question of fact. *213 Commissioner v. Heininger,320 U.S. 467, 475, (1943); Walliser v. Commissioner,72 T.C. 433, 437 (1979). Ordinary has been interpreted to mean that an expense must bear a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 495-496 (1940); Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 660 (1962). Necessary has been interpreted to mean that the expense must be "appropriate" and "helpful" to the taxpayer's trade or business. Commissioner v. Heininger, supra at 471; Carbine v. Commissioner,83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Where an expenditure is, by its nature, ordinary and necessary, but is unreasonable in amount, only the reasonable portion qualifies for a deduction under section 162. United States v. Haskel Engineering & Supply Co.,380 F.2d 786, 788-789 (9th Cir. 1967). *214 Petitioners argue that in order to build up the business they chose not to extract funds from VIP and thus declined to take salary or wages. However, petitioners contend that they were, nonetheless, engaged in the trade or business of providing travel services to recreational pilots. Petitioners argue that their individual efforts on behalf of VIP were motivated by the interest in generating profits for VIP and thus for themselves. Petitioners contend that, therefore, all of the expenses which they claimed as business expenses were directly and proximately related to their VIP activities. Petitioners bear the burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Although the record indicates that petitioners' activities with respect to the VIP tours were devoted to furthering VIP's business, the business of VIP is not the business of its shareholders. It is well settled that a corporation and its shareholders are separate entities. Low v. Nunan,154 F.2d 261 (2d Cir. 1946). Furthermore, a taxpayer may not deduct expenses which were incurred for the benefit of others. Deputy v. du Pont, supra;Noland v. Commissioner,269 F.2d 108, 109 (4th Cir. 1959), *215 affg. a Memorandum Opinion of this Court. Because a corporation's business is distinct from that of its shareholders, officers and employees, they may not deduct expenses which promote the business of the corporation. Leamy v. Commissioner,85 T.C. 798 (1985); Kahn v. Commissioner,26 T.C. 273 (1956). Although the profits which result from petitioners' labors will eventually flow through to them as shareholders, the corporation remains a separate and distinct entity which cannot be disregarded. Petitioners' efforts were indisputably intended to produce profits for VIP. However, the profits petitioners will ultimately receive will be the direct result of their stock ownership rather than their efforts for VIP. Leamy v. Commissioner, supra;Bessenyey v. Commissioner,45 T.C. 261 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Thus, the expenses which petitioners claimed as business deductions are properly viewed as VIP's expenses rather than petitioners' expenses. Petitioners argue that Leamy v. Commissioner, supra, and Hirsch v. Commissioner,315 F.2d 731, 736 (9th Cir. 1963), *216 affg. a Memorandum Opinion of this Court, cannot be applied to them because, unlike the subchapter C corporations involved in those cases, VIP was a subchapter S corporation. Thus, petitioners reason, even though VIP never paid salaries or dividends the profits would eventually flow through to petitioners by operation of law giving petitioners the requisite profit motive. Although all future profits will pass through to petitioners, their profit motive is no greater than that of any subchapter C shareholder. VIP remains a separate taxable entity regardless of whether it is a subchapter S corporation or a subchapter C corporation. It is VIP which "reaped the income from petitioners' activities, and yet paid none of petitioners' expenses and nothing for petitioners' efforts in producing the income." Leamy v. Commissioner, supra at 808. We do not agree with petitioners that a subchapter S corporation should be treated differently from a subchapter C corporation in this respect. [4] Because the expenditures in issue were made on behalf of VIP's business and not petitioners' business, we conclude that petitioners may not claim these expenses as business expense deductions. *217 We need not address respondent's other arguments because we make our determination on these grounds. If petitioners had been employed by VIP and the expenses were not reimbursed, petitioners' expenses might have been deductible as unreimbursed employee expenses. However, in order to preserve operating funds for the business, petitioners chose to forego remuneration, and we must abide by that decision. Thus, petitioners are not engaged in the trade or business of being VIP employees because they were unpaid. Leamy v. Commissioner, supra at 807; Hirsch v. Commissioner, supra at 736. [5]
Thus, we conclude that the expenses which petitioners claimed as business expenses belonged to VIP and not to petitioners personally. For the reasons discussed above, *218 Decision will be entered for the respondent.
Footnotes
1. "V.I.P." stood for Very Interesting Places.↩
2. Some of the activities which were organized by VIP allowed members to watch or participate in horned toad races, chili cooking contests, clam digging and a tour of a nuclear plant.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
4. If petitioners had allocated the expenses at issue to VIP and had deducted them on VIP's income tax return, the resulting loss would have ultimately passed through to petitioners personally. However, this was not done and cannot help petitioners now.↩
5. See also Blair v. Commissioner,T.C. Memo. 1988-581; Thomas v. Commissioner,T.C. Memo. 1988-505↩.