T.C. Summary Opinion 2016-21

UNITED STATES TAX COURT

LAWRENCE M. ALEAMONI AND MARJORIE C. ALEAMONI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10396-15S.                    Filed May 12, 2016.

Lawrence M. Aleamoni and Marjorie C. Aleamoni, pro sese.

Derek S. Pratt, for respondent.

SUMMARY OPINION

ARMEN, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1] Unless otherwise indicated, all subsequent section references, as well as all
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income tax as follows:

| Year | Deficiency |
|------|-----------|
| 2010 | $13,615 |
| 2011 | 9,952 |
| 2012 | 8,697 |

As stated in the notice of deficiency, the deficiency for 2010 does not take into account two specific payments made by petitioners, "which amounts will be applied upon the final disposition of this case."

After concessions by petitioners,[2] the sole issue for decision is whether petitioners are entitled to deduct on their individual income tax returns advances made to a so-called C corporation in which they held a 50% interest.

_____

[1](...continued)
subchapter references, are to the Internal Revenue Code in effect for 2010, 2011, and 2012, the three taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners concede all of the adjustments made by respondent in the notice of deficiency for each of the years in issue except for the disallowance of the deductions claimed for amounts advanced to their C corporation.

## Background

Some of the facts have been stipulated, and they are so found. The Court incorporates by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners resided in the State of Arizona at the time that the petition was filed with the Court.

Petitioner Lawrence M. Aleamoni holds a Ph.D. and is a professor emeritus in the College of Education at the University of Arizona (UA) in Tucson. With training and knowledge in the fields of psychology, mathematics, and statistics, Professor Aleamoni is what is known as a psychometrician. Since 1966 Professor Aleamoni's main focus in his professional career has been devising measures and appraisal methods in the field of faculty and personnel evaluation and improvement.

In addition to his teaching, research, and writing duties at the UA College of Education, Professor Aleamoni has served both nationally and internationally as a consultant to numerous other colleges, universities, corporations, organizations, and governments in designing and implementing comprehensive faculty and personnel evaluation systems. Professor Aleamoni has also conducted numerous

workshops and other programs, published extensively, and presented many papers in his field of expertise.

In the mid-1980s, and in order to handle his "outside" consulting and work activities, Professor Aleamoni created Comprehensive Data Evaluation Services, Inc. (CODES, Inc.), an Arizona corporation. At all relevant times Professor Aleamoni and Mrs. Aleamoni have each owned 25% of the shares of CODES, Inc. and their children have owned the remaining 50%. Also, at all relevant times for tax purposes CODES, Inc. has been a so-called C (or subchapter C) corporation that reports on a fiscal year ending June 30.

Over the years petitioners have advanced sums of money to CODES, Inc., which the corporation has reflected on its general ledger as loans from shareholders. In the mid-1990s petitioners began to attach a Schedule C, Profit or Loss From Business, to their individual income tax return, and on each such Schedule C petitioners claimed a deduction for money advanced to CODES, Inc. during the calendar year.

Specifically for 2010, 2011, and 2012, the taxable years in issue, petitioners filed Forms 1040, U.S. Individual Income Tax Return, and attached to each such return a Schedule C. Petitioners did not report any gross receipts or sales on any

of the Schedules C; however, petitioners did claim thereon a variety of deductions, among them the following:

| Year | Deduction | Amount |
|------|-----------|--------|
| 2010 | Personal Loan to Business | $47,978.21 |
| 2011 | Personal Loan to Business | 36,683.90 |
| 2012 | Personal Loan to Business | 25,200.00 |

In each instance "Personal Loan" represented the advance of money made by petitioners to CODES, Inc. and "Business" represented the corporation.

CODES, Inc. filed Forms 1120, U.S. Corporation Income Tax Return, for its fiscal years ended June 30, 2010 through 2012. On each of its corporate returns CODES, Inc. reported gross receipts or sales, claimed various deductions, and ultimately reported negative taxable income. The Schedules L, Balance Sheets per Books, of the Forms 1120 for FYE June 30, 2011, and FYE June 30, 2012, reflect "Loans from shareholders" in increasing amounts.[3]

## Discussion

The Court decides the disputed issue in this case on the basis of the preponderance of the evidence and without regard to the burden of proof. See

---

[3] The record does not include a completed Schedule L for the Form 1120 for CODES, Inc. for its FYE June 30, 2010.

Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); <u>cf.</u> sec. 7491(a).

Petitioners contend that their advances to CODES, Inc. constitute loans to the corporation.  Petitioners further contend that the advances are deductible on their individual income tax returns (on Schedules C) as business expenses.  In contrast, respondent contends that the advances are not deductible whether they are characterized as loans or as capital contributions.  The Court agrees with respondent that the advances are not <u>currently</u> deductible regardless of their characterization.[4]  Accordingly, as discussed below the Court is obliged to sustain respondent's disallowance of the claimed deductions.

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or

---

[4]  If the advances were in fact loans, then petitioners might be entitled to a bad debt deduction <u>in the future</u> for any debt that becomes wholly or partially worthless.  <u>See</u> sec. 166; secs. 1.166-1 through 1.166-3, 1.166-5, Income Tax Regs.  Or if the advances were capital contributions, then petitioners might be entitled to a capital loss deduction <u>in the future</u> if their stock becomes worthless.  <u>See</u> sec. 165(g); sec. 1.165-5, Income Tax Regs.; <u>see also</u> secs. 1211 and 1212.  But at trial petitioners made clear that CODES, Inc. remains in existence and that they do not regard their advances to CODES, Inc. to be bad debts; rather, petitioners testified that they expect their advances to be repaid in due course and that, over the years, some amounts have in fact been repaid from time to time.  In addition, at trial petitioners never intimated that their stock in CODES, Inc. is worthless, and the record would not support a finding that it is.

business".  Thus, for an advance to be deductible under section 162(a) the advance must satisfy several requirements, among them that it be an "expense" that is paid or incurred in carrying on a trade or business.

Neither section 162 nor the regulations promulgated thereunder define the term "expense" other than through exemplification.  But, however challenging it may be to define what an expense is, it is possible to say what an expense is not.  And in the context of the instant case it may be said that an expense is not an investment.  In other words, an advance made by a shareholder to a corporation for the use of the corporation in furtherance of its business is an investment in the corporation, whether the advance is in the form of a loan (giving rise to an asset--a loan receivable--owned by the shareholder) or a capital contribution (giving rise to an increase in the shareholder's basis in his or her stock in the corporation).  In either instance the shareholder hopes to profit as an investor through (1) the receipt of interest on the loan or the receipt of dividends on the stock and, regardless of the nature of the investment as debt or equity, (2) an increase in the value of the stock through the corporation's becoming a more viable profit-making enterprise.

Petitioners might argue that CODES, Inc. is little more than Professor Aleamoni's alter ego.  However, as the U.S. Supreme Court made clear many

decades ago, a corporation formed for legitimate business purposes--as CODES, Inc. undoubtedly was--and the corporations's shareholders are separate entities, Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943), and the business of the corporation is separate and distinct from the business of its shareholders, id. at 438-439; Deputy v. du Pont, 308 U.S. 488, 494 (1940). These fundamental principles have been applied by the Court even if a corporation is formed to perform personal services rendered by its shareholders and even if the corporation has only one shareholder who exercises total control over its affairs. See Dennis Katz, D.D.S., P.C. v. Commissioner, T.C. Memo. 2002-118. Thus, "[b]ecause a corporation's business is distinct from that of its shareholders, officers and employees, they may not deduct expenses which promote the business of the corporation." Russell v. Commissioner, T.C. Memo. 1989-207, 1989 Tax Ct. Memo LEXIS 207, at *9; see Deputy v. du Pont, 308 U.S. 488.[5]

_____

[5] It may be that petitioners would have benefited tax-wise if CODES, Inc. had been formed as a so-called S (or subchapter S) corporation rather than as a C corporation. See generally secs. 1361 et seq.; Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, paras. 6.01 et seq. (7th ed. 2000). However, it was not, and as the caselaw makes clear, "[t]ax consequences are determined on the basis of what happened in fact, not what might have happened." Noonan v. Commissioner, T.C. Memo. 1986-449, 1986 Tax Ct. Memo LEXIS 158 at *43, aff'd without published opinion, 976 F.2d 737 (9th Cir. 1992); see Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) ("[W]hile a taxpayer is free to organize his affairs as he chooses,

(continued...)

Finally, at trial petitioners testified that respondent had previously examined their Schedules C for at least two prior years and that the deductions claimed for advances to CODES, Inc. had been allowed. Petitioners stated that it was unsettling to be in court now litigating a matter that they thought had been resolved administratively in their favor some time ago.

Although the Court can appreciate petitioners' frustration, the U.S. Supreme Court has again provided definitive guidance. Thus, in Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183 (1957), the Supreme Court held that the Commissioner's failure to challenge a taxpayer's treatment of an item in an earlier year does not preclude an examination of the correctness of the treatment of that item in a later year because "[t]he doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." Indeed, the Supreme Court has held that the Commissioner may correct mistakes of law "even where a taxpayer may have relied to his detriment on the Commissioner's mistake." Dixon v. United States, 381 U.S. 68, 73 (1965); see Greenfeld v. Commissioner, T.C. Memo. 1966-83 ("[A]cquiescence in a taxpayer's treatment of an item in prior years does not prevent the Commissioner from attacking such treatment in later

⁵(...continued)
nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not[.]").

years."). In short, in a tax case the doctrine of estoppel is to be applied against the Commissioner "with utmost caution and restraint" and "such situations must necessarily be rare, for the policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), aff'g in part, rev'g in part 32 T.C. 998 (1959).

In order to give effect to the Court's disposition of the disputed issue, as well as petitioners' concessions, see supra note 2,

Decision will be entered for

respondent.[6]

---

[6] See supra p. 2 regarding payments to be credited against the deficiency for 2010.