*Decision will be entered under Rule 155.*

FRANK A. AND CHARLOTTE T. LEAMY, PETITIONERS V. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 29126–83.    Filed November 18, 1985.

*Michael Wells*, for the petitioners.
*Miles D. Friedman*, for the respondent.

DRENNEN, *Judge*: Respondent determined the following deficiencies and additions to tax in petitioners' Federal income tax:

| Year | Deficiency | Addition to tax sec. 6651(a)[1] |
|------|-----------|------------------------------------|
| 1979 | $5,127 | $524 |
| 1980 | 5,384 | 330 |

After concessions[2] by both parties, the issues for our decision are: (1) Whether petitioners Frank A. and Charlotte T. Leamy were engaged in the trade or business of being travel agents and may therefore deduct travel, automobile, and entertainment expenses incurred by them in 1979 and 1980 either as ordinary and necessary business expenses or as unreimbursed employee business expenses; and (2) whether petitioners may deduct expenses incurred by petitioner Frank Leamy in traveling from Dallas to San Diego and from San Francisco to San Diego as away from home travel expenses incurred in traveling between two places of business. If petitioners are found to not be engaged in the trade or business of being travel agents, we will address the issue of whether their travel expenses are deductible as educational travel expenses.

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Prior to trial, respondent conceded that no additional tax was due under sec. 6651(a) for 1980, while petitioners conceded the imposition of such tax for 1979. In addition, petitioners conceded that they are not entitled to deductions for the following: (1) Depreciation adjustments on a motorhome in the amount of $2,275 for 1979 and $2,275 for 1980; (2) hotel expenses in 1979 and 1980 of $1,040 and $1,274, respectively; and (3) parking lot fees in 1980 of $216.

## FINDINGS OF FACT

Some of the facts have been stipulated and they are so found. The stipulations of fact and joint exhibits are incorporated herein by this reference.

Petitioners Frank A. and Charlotte T. Leamy (hereinafter referred to as Frank and Charlotte, or petitioners) were legally married, but living separately, when their joint returns and the petition in this case were filed. Frank lived in Carrolltown, Texas, and Charlotte lived in San Diego, California. Petitioners filed their 1979 and 1980 individual income tax returns with the Internal Revenue Service Center in Austin, Texas. For purposes of determining jurisdiction in the event of an appeal in this case, the parties have stipulated that petitioners' residence was San Diego, California, at the time this petition was filed.

During the years at issue, Frank was a pilot for American Airlines and Charlotte was a full-time school teacher for the Poway Unified School District in or near San Diego, California. Charlotte lived in a house owned by petitioners in San Diego with two children. For the first half of 1979, Frank's base of operations for American Airlines was San Francisco. For the remainder of 1979, plus all of 1980, Frank's base of operations was Dallas, Texas. Frank spent about one-half of his time in San Diego and the rest of his time was spent flying for American Airlines. Frank and Charlotte purchased a townhouse in Carrolltown, Texas, near Dallas, for Frank's use while he was based in Dallas. They rented the townhouse to Frank's brother for an amount sufficient to cover the mortgage payments. When Frank was not flying, he traveled to San Diego where he stayed with the family. Frank chose to be based outside of San Diego for economic reasons, and he had sufficient seniority to choose where he wished to be based for American Airlines. Frank and Charlotte had some marital problems during this time but were never legally separated. Petitioners claimed $1,440 in 1979 and $1,685 in 1980 as amounts which were substantiated for away from home travel expenses for Frank's transportation and travel from San Francisco and Dallas to and from San Diego.

In 1977, petitioners purchased a travel agency in San Diego called Vacations Unlimited (VU). VU was a California corporation incorporated in 1971. Frank owned 60 percent of VU's

stock, and Charlotte owned the remaining 40 percent.[3] Frank testified that during the years at issue, VU had actual gross sales of about $1.4 to $1.6 million dollars. VU had two different kinds of employees, salaried employees and commissioned employees. Salaried employees were paid a regular salary. During the years at issue, VU had from three to eight salaried employees. Commissioned employees negotiated their compensation with VU. Commissions negotiated ranged from 40 to 60 percent of the income they generated for VU.

Corporate policy at VU[4] allowed for the reimbursement of certain employee expenses. The basic cost of company-designated familiarization trips, or "FAM trips" as they are called in the travel agency business, which were taken by salaried employees were paid for by VU.[5] The salaried agents were paid their full salaries while on these trips. FAM trips are trips taken by sales employees to allow the employees an opportunity to become familiar with a travel-related area, a particular tour or cruise, or a specific program. Sometimes FAM trips are sponsored by Government agencies or other groups that bear part of the expense. Trips that were not company-designated but were instead, voluntary, i.e., the employee chose to take the trip of his own accord, were not reimbursed by VU. The decision as to what was a company-designated FAM trip and would therefore be reimbursed by VU was made either by VU's president, Frank; its vice president, Charlotte; or the office manager, Daniel Wise (Wise).[6] VU's corporate policy allowed the reimbursement of 50 percent of the cost of a company-designated FAM trip taken by a commissioned employee. Frank stated that while the policy existed allowing reimbursement of commissioned employees, in practice, VU never reimbursed any commissioned employees. Employees were not required to take FAM trips, but Frank stated that virtually every agent in VU's office traveled on at least one FAM trip per year. Corporate policy also provided for reim-

[3] Prior to petitioners' complete ownership of VU's stock, several individuals held minor interests in the corporation. We do not detail these interests for they are not relevant to our decision.

[4] Petitioners introduced a document into evidence at trial that described the corporate policies of VU. Several sections in the manual were crossed out sometime during 1979 and 1980 by Frank.

[5] "FAM" trips were usually planned or arranged by airlines, resort areas, or others who benefited from tourist travel. These were offered to travel agents at discounted prices in the hope that the agents would direct more tourists to their activities.

[6] Frank stated that he made the determination that his FAM trip in 1979 was not company designated.

bursement of legitimate business expenses. Generally, all expenses of salaried employees were paid by VU, while expenses of commissioned employees were split.

Petitioners were at all times during the years at issue treated as commissioned sales agents by their own choice. They both signed agreements on May 30, 1977, to serve as outside sales employees of VU and to receive a 50-percent net commission for any sales they made. After purchasing VU, Frank acted as its president, while Charlotte was vice president and secretary.

On October 1, 1978, petitioners called a special meeting of VU's board of directors to issue an announcement which stated that no officer or director at VU was to receive more than $1 a year for his or her work as officer or director. In addition, the announcement provided that normal expenses were to be paid for travel and other business expenses. Petitioners also agreed to give up any commissions they would have received and accept $1 as full payment for their efforts. Frank stated that the reasons for these changes in policy were a poor cash flow and the need to conserve cash because of VU's move to a new office location. At trial, no corporate books or records were presented by petitioners as evidence of VU's financial situation. During the years at issue, neither Frank nor Charlotte applied for, or received, any sales commissions. Frank and Charlotte also did not receive any salary or dividends while they owned the company.

Frank received his training as a travel agent in 1971 in Chicago where he attended the International Travel Training School for 2 months. He then served as an outside sales agent for Around the World Travel, in Palatine, Illinois. Frank was a member of the American Society of Travel Agents (ASTA) and the International Air Traffic Association (IATA). Neither of these organizations required that Frank take any continuing education courses to maintain his membership. Through his interest in the travel agency business, Frank met the owner of VU, and then subsequently purchased VU.

Charlotte also had worked with Around the World Travel in Palatine, Illinois. Charlotte was not as actively involved with VU as Frank. She stated that she worked at VU during the summer of 1977 and 1978. Wise stated that Charlotte was in VU's office infrequently. He stated that all employees were to

submit a list of clients to him for which they sought sales commissions, but he never received any such list from Charlotte. Charlotte did not offer any records to show that she had earned sales commissions.

*Travel Expenses*

After purchasing VU, petitioners made several trips incurring expenses for which they now seek deductions. Petitioners attended the ASTA World Congress (World Congress) in Munich in 1979. The World Congress was a trade show for travel agents. Frank and Charlotte were particularly interested in this meeting since VU specialized in European tours, and the meeting was held in Europe with many representatives from European countries. Frank viewed the trip as an "educational experience" because it gave Charlotte and him the opportunity to meet with the European tour operators first hand and to find out what they were offering. The World Congress lasted for a week from October 21 to 26. Frank and Charlotte attended the World Congress for 4 days. Charlotte then returned to San Diego, and Frank traveled to France, Paris, and London. Petitioners claimed $2,939 which has been substantiated as expenses for travel, meals, lodging, and seminar costs of attending the World Congress.

Frank traveled to France to meet with the tourism director of "Floating Through Europe." Floating Through Europe was a company that arranged trips on a floating barge between Lyon and Dijon, France. Frank was in the process of chartering the barge for a tour scheduled the following year. Frank then went to Paris to meet with representatives of several tour companies that specialized in ski programs. He stated that he was trying to arrange tours that combined British and American tourists in the same group. Frank then returned to the United States.[7]

In 1979, Frank took a ski trip to France. The trip was a FAM trip. Frank was approached by Air France about this trip because he had previously taken a ski tour group to France aboard Air France and it was a way for Frank to view the new high-altitude ski resorts in France. Frank claimed a deduction

---

[7] It is unclear from the record, but it appears that the cost of Frank's trip to France is included in the expenses deducted for travel to the World Congress.

of $854 as expenses which have been substantiated for travel, meals, and lodging for this trip.

Petitioners sought a deduction for three trips in 1980, one to Park City, Utah; one to France; and one to Cleveland, Ohio. The trip to Park City, Utah, was a ski trip. Petitioners had arranged it as a package trip for 16 people. Frank and Charlotte acted as "escorts and counsel" to the people on the trip. The trip to France in 1980 was to take a group aboard a floating barge. Frank and Charlotte had arranged the 3-week trip with Floating Through Europe. Nineteen people went on the trip. The trip was arranged by promotional nights that petitioners held at their home in San Diego for 9 months. The trip was promoted as an escorted trip. The credibility of the trip was enhanced by the fact that Charlotte and Frank went along as escorts since they had both been to France, and he had seen the barge, met the captain, and was familiar with the itinerary. Petitioners deducted $4,975 as expenses which have been substantiated for travel, meals, and lodging for this trip to France.

Petitioners were alumni of Kent State University in Ohio. They made a trip to Cleveland, Ohio, in 1980 to meet with other Kent State alumni and with officials of the alumni association to give a presentation on European travel. Petitioners had discussed with the alumni association the possibility of arranging some alumni group travel. Petitioners claimed $427 in 1980 as amounts which have been substantiated for their travel, meals, and lodging to Cleveland, Ohio.

Two persons who had been employed by VU, Wise (the office manager) and Kathleen Zavinsky (Zavinsky), and Bet Townley (Townley), an employee of British Caledonian Airways, testified as to their knowledge of FAM trips. Zavinsky was employed by VU in 1978 and 1979, as an outside sales agent. Zavinsky met the petitioners through her job as an instructor at Mesa College. She taught students entry-level skills for becoming travel agents and some of her students served as interns at VU. Zavinsky stated that to be offered a FAM trip, a person had to be very qualified and visible in the industry. In her opinion, an absentee owner would not be asked to go on a FAM trip. She viewed the trips as very educational and as customary in the industry. She also viewed Frank as a very ethical and knowledgeable person.

Wise had taken FAM trips, and he viewed them as an opportunity "to gain an education background in the destination" of the trip. He viewed the trips as customary and as a great sales tool. Wise stated that in his opinion Frank was an active manager of VU. He also stated that Frank was a competent travel agent with a favorable reputation.

Townley testified that she had met Frank in April of 1982. She stated that he worked with her in 1982 and 1983 on a book she was writing about travel to Britain. Townley stated that British Caledonian "hand-picked" the people it offered FAM trips. She stated that the people chosen were those working full time in the industry. In her opinion, Frank was a very professional and knowledgeable person.

*Automobile Expenses*

Petitioners claimed a deduction on their 1979 Federal income tax return for unreimbursed automobile expenses. This deduction included $1,401.36 for the leasing of the automobile; $1,736 for operating expenses; and $67 for registration fees and use tax. These amounts have been substantiated.

The automobile was leased in Frank's name and was used by Frank and Charlotte in driving from their home in San Diego to VU's office and returning. Other VU personnel including Wise (the office manager), a bookkeeper, and an outside sales employee used the automobile to perform various errands for the corporation. Wise stated that operating expenses incurred in the use of the car were reimbursable by petty cash disbursements. No evidence was presented that petitioners sought reimbursement for these expenses from VU or that VU offered to pay for the automobile expenses.

*Entertainment Expenses*

Petitioners claimed a deduction in 1979 of $340 for entertainment expenses. This amount has been substantiated. The parties have stipulated that if either of the petitioners is held to be engaged in the trade or business of being a travel agent, then all of the entertainment expenses are deductible. If we find that neither of the petitioners is in that trade or business, then the entertainment expenses are not deductible.

OPINION

As we understand it, petitioners' principal contention is that they were individually and independently in the business of being commissioned travel agents, and that the expenses they incurred for travel, entertainment, and the use of an automobile were deductible as ordinary and necessary expenses of conducting that business, or for education which maintained and improved their skills required in that business. Alternatively, they contend the expenses are deductible as unreimbursed employee business expenses. Petitioners also contend that Frank's expenses incurred in traveling from San Francisco and Dallas, stipulated to be his tax homes, to San Diego are deductible as expenses incurred in traveling from one place of business to a second place of business.

On the other hand, respondent contends that none of the expenses are deductible because petitioners were not individually engaged in the business of being travel agents; the travel agency business was that of VU. Nor are they deductible as unreimbursed employee business expenses because if the expenses were incurred for the benefit of VU, petitioners could have been reimbursed by VU had they asked for reimbursement. Respondent also contends that Frank's traveling expenses between San Francisco-Dallas and San Diego were nondeductible, commuting expenses incurred primarily to be with his family in San Diego, rather than for business purposes. Respondent concludes by noting that petitioners' efforts to deduct the above expenses are an attempt to convert corporate business expenses into deductible personal business expenses.

In our opinion, the principal and decisive issue is whether petitioners' activities in connection with VU constituted a separate and independent business of petitioners.[8] If they do not, we cannot find that the expenses involved are deductible by petitioners as ordinary and necessary, or educational, expenses of petitioners' personal business, or as unreimbursed employee business expenses. If petitioners' activities did con-

---

[8]While Charlotte did occasionally participate in the activities of VU, Frank's activities are the ones with which we are most concerned. It does not appear that Charlotte acted independently of Frank with respect to the travel agency business. Our conclusions on the trade or business issue with respect to Frank are equally applicable to Charlotte.

stitute a separate and independent business of petitioners, we would have to conclude that at least a part of the expenses involved were deductible as ordinary and necessary business expenses.

Without deciding, because it is not necessary to do so, we believe that many of the travel, transportation, and entertainment expenses here involved would qualify as ordinary and necessary business expenses of an independent travel agent. The " FAM " trips provide the agent with firsthand information with respect to the interesting things that can be seen and done at various places; the comfort, convenience, and condition of facilities at those places; the cost and availability of transportation to and from those places; the types of people and services the traveler can expect; and many other things that will be of interest to a prospective customer. Such information can be converted into income from sales of the services a travel agency sells to the public. A personal knowledge from experience with the ski slopes in a particular area may well convince a skier-customer to visit a particular area the agent is promoting, rather than some other area the skier has heard of. And the utilization of knowledge acquired on trips in speaking to groups contemplating tours may also produce revenue for a travel agent.[9]

However, we cannot find from the evidence in this case that petitioners have proved that their activities in connection with VU constituted a separate personal trade or business of petitioners during the years involved. The evidence is convincing that Frank, at least, was an experienced and knowledgeable travel agent who probably could have been a successful commercial travel agent on his own or could have been a valuable employee of a travel agency. But Frank and Charlotte chose to be neither. They drew no salaries nor dividends from VU, and by written agreement precluded themselves from receiving any commissions for business they produced for VU. To be in a trade or business, one must intend to make a profit. *American Properties, Inc. v. Commissioner*, 28 T.C. 1100 (1957), affd. 262 F.2d 150 (9th Cir. 1958); *Hirsch v. Commissioner*, 315 F.2d 731, 736 (9th Cir. 1963). See *Dreicer v. Commission-*

---

[9]We recognize that this can be overdone and result in the Government's picking up part of the tab for an agent's vacation trips, but there is no evidence that this was being done by the instant petitioners.

*er*, 78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); *Fuchs v. Commissioner*, 83 T.C. 79 (1984). The only profit from the travel agency business foreseeable by petitioners under the circumstances as they existed in 1979 and 1980 was from taxes. "Profit" in this context means economic profit, independent of tax savings. *Beck v. Commissioner*, 85 T.C. 557 (1985). Petitioners did not even intend to receive any income from their traveling activities. The corporation reaped the income from petitioners' activities and yet paid none of petitioners' expenses and nothing for petitioners' efforts in producing the income. Instead, petitioners, while including nothing in their taxable income for their efforts, are claiming deductions for expenses which they set off against their other taxable income to reduce their individual taxes.

Furthermore, petitioners' arrangements with their corporation, VU, could build up the value of the corporate stock, which petitioners could subsequently access as capital gain by selling the stock.[10] However, such a profit would not be a direct product of their business as independent travel agents. It would arise as a result of their ownership of VU. Such prospective profit does not provide the necessary profit motive for the business of being independent travel agents. *Bessenyey v. Commissioner*, 45 T.C. 261 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Neither do the expenses here involved qualify under section 212 as ordinary and necessary expenses incurred for the production or collection of income. They produced no current income, and there is not the necessary nexus between the expenses incurred and a profit that might be realized on the subsequent sale of the business. In this context, they would be a contribution to the capital of VU.

Respondent's determination that petitioners were not in the trade or business of being travel agents is presumed to be correct, and petitioners have the burden of overcoming that presumption. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a). They have failed to do so.

The evidence is clear that the travel agency business in which petitioners participated was that of their wholly owned

---

[10]Since petitioners failed to produce any of the books, records, or tax returns of VU, we do not know whether VU paid income taxes during the years here involved, or whether petitioners realized capital gain upon the sale of VU in subsequent years.

corporation, VU. VU had three to eight employees, other than petitioners, who worked for and in the agency. Apparently all the reservations and ticketing were arranged through VU, and all the income from the travel agency activities was funneled into VU. We have no doubt that petitioners' activities aided the business of VU. But petitioners received no income from such activities—VU did. The expenses which petitioners incurred and claimed as deductions in these years all related to the business of VU. Those expenses were either business expenses of VU or personal expenses of petitioners. In neither case are they deductible by petitioners. It is well established that, absent a binding agreement, a taxpayer may not deduct expenses incurred for the benefit of others. *Noland v. Commissioner*, 269 F.2d 108, 109 (4th Cir. 1959). Thus corporate officers, employees, and shareholders who voluntarily incur corporate expenses are not entitled to a deduction for those expenses because they are not considered necessary employee expenses. *Westerman v. Commissioner*, 55 T.C. 478, 482 (1970).

It is also a well settled premise that a corporation and its shareholders are separate entities. *Low v. Nunan*, 154 F.2d 261 (2d Cir. 1946). A corporation's business is separate from the business of its shareholders, officers, or employees. None of the latter may deduct as personal expenses those expenses that further the business of the corporation. *Kahn v. Commissioner*, 26 T.C. 273 (1956). We are convinced that the expenses here involved related to the business of VU and not to what could be considered a trade or business of petitioners.[11]

Petitioners have presented an alternative argument in seeking a deduction for their travel expenses. Petitioners argue that their expenses for travel should be allowed as an educational travel expense under section 162(a).

Educational expenses are deductible business expenses when the education maintains or improves the skills required by an individual in his or her employment or other trade or

---

[11]As an additional reason for denying petitioners' deduction, we are not convinced that they could not have been reimbursed for these expenses by VU. The evidence presented by petitioners concerning VU's reimbursement policy was unclear. Portions of the document had been crossed out by Frank, and it was unclear which policies were effective at what time. However, VU did provide that commissioned employees could be reimbursed for one-half of their legitimate business expenses. Assuming that this policy was adhered to, since petitioners did not seek reimbursement, they may not now seek a deduction for the expense. See *Podems v. Commissioner*, 24 T.C. 21 (1955); *Drury v. Commissioner*, T.C. Memo. 1977-199.

business, or if the education meets the express requirements of the taxpayer's employer imposed as a condition to the retention of his employment relationship, status, or rate of compensation. Sec. 1.162–5(a), Income Tax Regs.

We have held that petitioners were not in the trade or business of being travel agents; therefore, they do not meet the threshold requirement of incurring the expense in a trade or business under section 162. In addition, the travel was not required as a condition of the petitioners' employment, or necessary for their maintenance of a certain status or rate of compensation. Therefore, we must deny petitioners' deduction for travel expenses under this alternative argument.

## Automobile Expenses

Petitioners claimed a deduction in 1979 of $2,844.36 for unreimbursed automobile expenses. These expenses were incurred by petitioners for an automobile that was driven by them from their home to VU and was also used by other employees of VU to run errands for the corporation.

Personal expenses incurred by a taxpayer in commuting from his home to his job are not deductible. Sec. 1.162–2(e), Income Tax Regs.; *Green v. Commissioner*, 59 T.C. 449 (1972). Therefore, any expenses incurred by petitioners in driving the automobile from their home in San Diego to VU's office is not deductible. Nor may petitioners deduct the automobile expenses as unreimbursed employee expenses under section 162. See, e.g., *Snarski v. Commissioner*, T.C. Memo. 1981–328. There is no evidence that petitioners sought reimbursement for these expenses from VU, and petitioners have not carried their burden of proving that the expenses could not have been reimbursed by the corporation. See, e.g., *Podems v. Commissioner*, 24 T.C. 21 (1955). The automobile expenses were an expense of the corporation since the automobile was used by corporate employees to carry on the corporation's business. It is not permissible to shift what appears to be a legitimate corporate expense, deductible by the corporation, to a taxpayer who seeks a personal deduction even though the taxpayer is the owner of the corporation. *Snarski v. Commissioner, supra.* Accordingly, we uphold respondent's determination denying petitioners' deduction for automobile expenses.

*Entertainment Expenses*

We have held that neither of the petitioners was independently engaged in a trade or business in 1979 or 1980. Therefore, according to the stipulation of the parties, respondent's determination denying a deduction for entertainment expenses is sustained.

*Away From Home Travel Expenses*

Petitioners seek to deduct expenses incurred by Frank in traveling from Dallas to San Diego and from San Francisco to San Diego. Respondent argues that these expenses are not deductible because they are a personal expense incurred by Frank in commuting from his job with American Airlines to San Diego to be with his family. The parties have stipulated that Dallas and San Francisco were Frank's "tax homes" in 1979 and 1980. Therefore, these expenses were incurred in Frank's traveling from his tax homes to San Diego. See *Commissioner v. Mooneyhan*, 404 F.2d 522 (6th Cir. 1968). We need not determine whether Frank's primary motivation in traveling to San Diego was to be with his family or for business reasons. We have found that Frank's involvement with VU did not constitute an independent trade or business; nor was he an employee of VU. Therefore, these expenses are not deductible by petitioners as expenses incurred by Frank in traveling between two businesses. However, it is our belief that Frank's primary motivation for traveling from Dallas and San Francisco to San Diego was to be with his family. Frank did mention that he and Charlotte were having some marital problems, but he stated that they were never legally separated or divorced. Frank also stated that it was his "economic choice" to be based outside of San Diego; he was not forced by his employer to live in Dallas or San Francisco since he had sufficient seniority to choose where he wished to be based for American Airlines. See *Green v. Commissioner, supra*. It is also our belief that whether or not Frank had spent time at the offices of VU, he would still have traveled to San Diego after he finished a flight for American Airlines, because that is where his family resided. Accordingly, respondent's determination denying petitioners' deduction for Frank's away from home travel expenses is sustained.

To reflect the parties' concessions and our disposition of the disputed issues,

*Decision will be entered under Rule 155.*

