KHOSROW & HASMIK ALJIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aljian v. Commissioner
Docket No. 21757-88
United States Tax Court
T.C. Memo 1989-553; 1989 Tax Ct. Memo LEXIS 551; 58 T.C.M. (CCH) 354; T.C.M. (RIA) 89553; October 10, 1989
Khosrow Aljian, pro so. Michael S. Noble, for the respondent. NAMEROFF
MEMORANDUM FINDINGS OF FACT AND OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Code [1] and Rule 180 et seq. Respondent determined a deficiency in petitioners' Federal income tax for 1984 in the amount of $ 7,338. Respondent also determined additions to tax under section 6651(a)(1) in the amount of $ 414, section 6654 in the amount of $ 101.54, section 6653(a)(1) in the amount of $ 366.90, and section *554 6653(a)(2) in the amount of 50 percent of the interest due on the deficiency. The issues for decision are: (1) whether petitioners are entitled to a deduction for amortization of a loss as the result of the confiscation of assets by the Iranian government; (2) whether petitioners may deduct legal fees incurred in defending a criminal prosecution; and (3) whether petitioners are liable for the additions to tax. Some of the facts have been stipulated and are so found. At the time of the filing of the petition herein, petitioners resided in Glendale, California. On September 6, 1975, Khosrow Aljian (hereinafter referred to as petitioner) and his wife Hasmik Aljian (formerly Hasmik Davoudian) established the Gemini International Forwarding Company, Ltd. (Gemini), a moving and storage business located in Tehran, Iran. The company maintained a warehouse as well as offices and employed 118 individuals, of which 90 were packers and 28 were office and clerical staff. The company served as *555 movers for the staffs of various embassies located in Tehran, including the American and British embassies. Gemini would pack the household goods of embassy employees and arrange for their shipment, as well as their passage through Iranian customs. Initially, petitioners were the sole stockholders of Gemini. According to Gemini's corporate constitution, petitioner and his wife each made an initial capital contribution to Gemini in the amount of 500,000 rials, for a total capital contribution of one million rials or the equivalent of $ 15,300. (According to the September 5, 1975, edition of the Wall Street Journal, the exchange rate between the American dollar and the Iranian rial was .0153 dollars to 1 rial.) The corporate constitution provided that petitioner and his wife would serve on Gemini's board of directors and that petitioner would serve as the company's managing director. Petitioners were born and lived in Iran until they emigrated to the United States in 1978. On emigrating from Iran, petitioners resided in Florida, and then moved to California in 1980. However, in 1978 and 1979, petitioner continued to spend a substantial amount of time travelling back and forth *556 to Iran to operate Gemini. Petitioners were naturalized as United States citizens in 1985. In October 1979, the so-called revolutionary guard took control of the Iranian government and toppled the Shah from power. By 1980, petitioner could no longer return to Iran due to his past close business association with the American embassy. According to petitioner, he was considered a spy by the Khomeini regime. Consequently, petitioner's life would be placed at risk if he returned to Iran. Since petitioner was unable to return to Iran to operate his business, petitioner appointed his accountant, Kourash Yar Ahmadi (Ahmadi), to serve as temporary supervisor of Gemini in petitioner's absence. Petitioner assigned a 20-percent interest in Gemini's profits to Ahmadi as compensation for performing these duties. In 1981, Ahmadi was arrested and Gemini's office, equipment, vehicles, warehouse, and other assets were seized and expropriated by the Iranian authorities. Ahmadi and petitioner (absente reo) were tried and convicted on charges of spying for the United States. Petitioner stated that Ahmadi was executed on July 12, 1981, and petitioner believes that he would encounter the same fate *557 should he return to Iran. On their 1984 Federal income tax return, petitioners deducted an amount attributable to losses incurred due to the Iranian government's seizure of Gemini's assets and property. Based strictly on memory, petitioners valued the expropriated assets at $ 1,184,000. Petitioners attempted to amortize this amount over 20 years resulting in a deduction of $ 59,200 per year, beginning in 1984. [2] Petitioner testified that the $ 1,184,000 loss consisted of the following items: ITEM
COST [3]
Warehouse
$ 673,000
Four Mercedes Benz Trucks (5 Tons)
88,000
Two Mercedes Benz Trucks (22 Tons)
190,000
Lift Trucks
12,850
Volvo Truck
75,000
Machinery in Warehouse
12,000
Office Equipment and Furniture
24,000
Debt
111,000
*558 Section 165(a) states the general rule that losses sustained during the taxable year that are not compensated for by insurance or otherwise are allowable as a deduction. However, in the case of individuals, deductibility is limited to (1) losses incurred in a trade or business, (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business, and (3) casualty and theft losses. Section 165(c); Brown v. Commissioner, 85 T.C. 968, 998 (1985), affd. sub nom. Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988), cert. denied U.S. , 109 S. Ct. 72 (1988). There is no provision in the Code for amortization of losses, as claimed by petitioners. A loss from expropriation is deductible in the case of an individual if the loss was incurred in a trade or business or in a transaction entered into for profit. Elek v. Commissioner, 30 T.C. 731 (1958); Whyte v. Commissioner, T.C. Memo. 1986-486, affd. 852 F. 2d 306 (7th Cir. 1988). An expropriation loss does *559 not qualify as a theft loss within the provisions of section 165(c)(3). The confiscation of property by government officials who are acting under color of legal authority, "arbitrary and despotic as it [may be]," does not constitute theft for tax deduction purposes. Powers v. Commissioner, 36 T.C. 1191, 1192 (1961). Petitioners were not engaged in the trade or business of operating a moving company. They were owners of stock in Gemini, which was the operating company. In addition, petitioner was the managing director of Gemini. It was Gemini, not petitioners, who owned the assets seized by the Iranian government. The loss from the seizure of the assets would be Gemini's loss, which is not deductible by petitioners. It is not permissible to shift what appears to be a legitimate corporate loss, deductible by the corporation, to a taxpayer who seeks a personal deduction, even though the taxpayer is an owner of the corporation. See Leamy v. Commissioner, 85 T.C. 798, 810 (1985). *560 Section 165(g) provides that in the case of a worthless security, the loss resulting therefrom shall be treated as a loss from the sale or exchange of a capital asset occurring on the last day of the taxable year in which the loss was incurred. The term "security" includes "a share of stock in a corporation." Section 165(g)(2)(A). The amount of the capital loss deduction allowed under section 165(g) is limited to the taxpayer's adjusted basis in the security. It can fairly be said that after the seizure, petitioners' stock in Gemini became worthless and that petitioners would be entitled to a deduction under section 165(g)(2) (if the requirements for taking a capital loss were satisfied under sections 1211 and 1212) since petitioners obviously acquired the Gemini stock in a transaction entered into for profit. See Weir v. Commissioner, 109 F.2d 996 (3d Cir. 1940), cert. denied 310 U.S. 637 (1940). However, a loss is only deductible in the year the loss occurred (without regard to carrybacks and carryovers.) Section 1.165-1(d)(1), Income Tax Regs. *561 In this case, we believe that Gemini's stock became worthless no later then 1981, and not in 1984. Petitioners would have been entitled to a deduction in 1981 under section 165(g). Because petitioners owned the shares of stock of Gemini for more than one year, the loss would be a long-term capital loss. Section 1222(4). In addition, capital losses may be carried forward indefinitely, subject to the rules of section 1212(b). The amount of capital losses allowable is limited to the extent of capital gains plus the lesser of: (1) taxable income from the taxable year (computed without regard to gains or losses from sales or exchanges of capital assets and without regard to the deductions provided in section 151 or any deduction in lieu thereof) reduced by the zero bracket amount; (2) $ 3,000; or (3) the sum of the excess net short-term capital loss over net long-term capital gain and one-half of the excess of the net long-term capital loss over the net short-term capital gain. Sections 1211(b); 165(f). *562 In addition, long-term capital losses sustained by individuals could not be offset against ordinary income on a dollar-for-dollar basis between 1981 and 1984 (the taxable years relevant herein). Only fifty percent of a taxpayer's net long-term capital losses may be used to reduce ordinary income. Thus, one dollar of long-term capital loss could only offset fifty cents of ordinary income. Individuals may carryover excess capital losses to succeeding tax years, but capital loss carrybacks are not allowed. Section 1212(b). The calculation of the amount of loss available for carryover must be made separately for each year. We are satisfied that the assets of Genesis were expropriated by the Iranian government in 1981. We are also satisfied that petitioners had a combined adjusted basis in their Gemini stock of one million rials or $ 15,300. There is no evidence that petitioners made any additional capital contributions. Acquisition of assets by Gemini does not increase petitioners' adjusted basis in the corporate stock and cannot be considered in computing petitioners' capital loss. However, since we do not have petitioners' joint return for 1981, we have no way of knowing whether *563 any portion of the $ 15,300 loss survived the absorbtion process required by law, so as to be available as a carryover to 1984. Since petitioners bear the burden of proving that they are entitled to the deduction claimed, Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), we must conclude that the evidence fails to prove any loss in regard to petitioners' Genesis stock in 1984. We sustain respondent on this issue. Petitioners deducted a legal fee on Schedule A of their 1984 income tax return in the amount of $ 3,605. This legal fee was paid by petitioners to defend Hasmik Aljian, who had been prosecuted and convicted in 1984 on charges of negligent driving. Business-related expenses incurred in criminal prosecutions are generally allowable. See Commissioner v. Heininger, 320 U.S. 467 (1943). However, the legal fee in the instant case was not related in any way to a business activity and was personal in nature. Therefore, pursuant to section 262, the legal *564 fee is not deductible. Petitioners' 1984 income tax return was filed with respondent on June 24, 1985. Petitioners offered no explanation on why they failed to timely file their return. Consequently, respondent's determination of the addition to tax for delinquency pursuant to section 6651(a)(1) is sustained. Respondent also determined an addition to tax against petitioners under section 6654(a) for failure to make timely estimated tax payments. This addition to tax is mandatory and cannot be waived due to reasonable cause. Section 1.6654-1(a), Income Tax Regs.; Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960). However, no addition to tax is imposed under section 6654(a) if one of the exceptions set forth in section 6654(e) is satisfied. Under section 6654(e)(2), no addition to tax is imposed under section 6654(a) if: (1) taxpayer's preceding taxable year was a taxable year of 12 months; (2) the taxpayer did not have any tax liability for the preceding taxable *565 year; and (3) the taxpayer was a citizen or resident of the United States throughout the preceding taxable year. Petitioners' joint Federal income tax return for the entire year 1983 reflects zero tax liability. In addition, petitioners were residents of the United States throughout 1983. Consequently, petitioners have satisfied the exception under section 6654(e)(2). We hold that petitioners are not liable for the addition to tax under section 6654(a). Finally, respondent determined additions to tax for negligence under section 6653(a)(1) and section 6653(a)(2). Under section 6653(a)(1), an addition to tax equal to five percent of the underpayment is imposed if any part of the underpayment is due to negligence or the intentional disregard of the rules and regulations. Under section 6653(a)(2), an addition to tax is imposed in an amount equal to 50 percent of the interest on the portion of the underpayment attributable to negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). *566 Petitioners bears the burden of proof to show due care. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972). Based upon our review of the record, we are satisfied that petitioners were not negligent and did not intentionally disregard rules and regulations. Therefore, we hold that petitioners are not liable for the additions to tax under sections 6653(a)(1) and 6653(a)(2). Decision will be entered for the respondent, except for the additions to tax under sections 6653(a)(1), 6653(a)(2), and 6654(a). Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Although the stipulation of facts purports to stipulate petitioner's tax returns for 1981, 1982, 1983, and 1984, the actual returns attached to the stipulation were for 1980, 1982, 1983, and 1984. The Court contacted the parties in an attempt to obtain the 1981 return and/or correct the stipulation of facts. Neither party could locate a copy of the 1981 return. Petitioners' purported amortization deduction would have produced no tax benefit on either the 1982 or 1983 return. ↩
3. With the exception of the debt, these costs reflect the original purchase prices for the above specified items, which were all purchased between 1975 and 1977. The sum of these items, including the debt, equals $ 1,185,850, which exceeds the amount amortized by petitioners by $ 1,850. Petitioners offered no explanation for this discrepancy.↩