T.C. Memo. 2002-197

UNITED STATES TAX COURT

PERRY H. KAY, SR., Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10828-00.               Filed August 8, 2002.

<u>Emil R. Sargent</u>, for petitioner.

<u>Portia N. Rose</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOLDBERG, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioner's Federal income tax for the taxable
year 1998 in the amount of $4,181.50.  Unless otherwise
indicated, section references are to the Internal Revenue Code in
effect for the year at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

After concessions by respondent,[1] the remaining issues for decision are (1) whether petitioner is entitled to deduct certain Schedule C, Profit or Loss From Business, expenses for the year at issue, and (2) whether petitioner is entitled to a casualty loss deduction of $5,151.19 for 1998.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Houston, Texas.

Petitioner holds a master's degree in music education from the University of North Texas. Petitioner was employed as a full-time band teacher for 31 years, 26 of those years at Lanier Middle School in Houston, Texas. Since retiring from full-time employment, petitioner has taught band part time. During 1998, petitioner was employed as a part-time assistant band director for the North Forest Independent School District.

---

[1] In a Stipulation of Settled Issues filed with the Court on Oct. 22, 2001, respondent conceded for the 1998 taxable year that petitioner is entitled to: (1) A dependency exemption claimed for his son; (2) head of household filing status; (3) an educational credit of $1,250; and (4) business expense deductions on Schedule C, Profit or Loss From Business, of $751 for legal or professional expense and $121 for professional and musician dues.

At trial, respondent conceded that petitioner is entitled to a Schedule C expense deduction of $1,047.49 for music educator and professional convention expenses incurred with respect to petitioner's attending the International Association of Jazz Educators Convention in New York City.

During 1998, petitioner also operated PK Production and Management (PK Production), a small business providing music entertainment services.  Petitioner managed and played in a band for compensation.  For the year at issue, the band only participated in four or five paid engagements.

With respect to PK Production, petitioner claimed that on January 1, 1998, he placed in service a 1995 Dodge Caravan (van), which was purchased in 1997.  During the year at issue, petitioner used the van to transport musical equipment to and from the band's engagements.  Petitioner testified that during 1998 the van was used primarily for PK Production business purposes.

On Schedule C, petitioner claimed various business expense deductions in the operation of PK Production.  Petitioner's claimed expense deductions that are at issue include:  (1) A section 179 expense deduction of $7,000 for the van; (2) expenses in connection with the van for business-related travel of $4,182; (3) production and management fees of $999.20; and (4) music educator and professional convention expenses of $333.95.

During 1998, petitioner owned a three-bedroom ranch-type house located at 5134 Heatherbrook Drive, Houston, Texas.  On September 11, 1998, a rain and wind storm damaged the roof and several rooms of petitioner's house.  Petitioner reported the incident to the State Farm Insurance Company (State Farm), with

whom petitioner maintained a homeowner's insurance policy during 1998. On October 12, 1998, State Farm settled the claim with petitioner for $857.12. On October 29, 1998, petitioner retained a contractor to replace rotten decking and install a new roof on petitioner's house. For the year at issue, petitioner claimed a casualty loss deduction on Schedule A, Itemized Deductions, of $5,151.19 related to the damage caused by the storm.

In the notice of deficiency, respondent disallowed the following: (1) The entire section 179 expense deduction claimed on Schedule C because petitioner "did not establish the percentage of business use" for the van and failed to provide other supporting information required to substantiate the deduction; (2) the business-related travel expense for the van claimed on Schedule C because petitioner failed to provide the supporting information necessary to establish that the deduction was "(a) incurred during the taxable year, and (b) an ordinary and necessary business expense"; (3) expenses claimed on Schedule C for (a) production and management fees, and (b) music educator and professional convention expenses because petitioner did not substantiate that these expenses were paid or incurred during the taxable year and were "ordinary and necessary" business expenses; and (4) the entire casualty loss deduction claimed on Schedule A because petitioner "did not establish that (a) a casualty or theft occurred, and (b) any loss was sustained".

OPINION

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to show that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving the entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

1. Schedule C--Business Expense Deductions

Section 162(a) allows a taxpayer to deduct all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business. To be "ordinary" the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. Du Pont, 308 U.S. 488, 495 (1940). To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, supra at 113. Additionally, the

---

[2]    Sec. 7491 does not apply in this case to place the burden of proof on respondent because petitioner neither alleged that sec. 7491 was applicable nor established that he fully complied with the substantiation requirements of sec. 7491(a)(2)(A).

expenditure must be "directly connected with or pertaining to the taxpayer's trade or business".  Sec. 1.162-1(a), Income Tax Regs.

Generally, if a claimed business expense is deductible, but the taxpayer is unable to fully substantiate it, the Court is permitted to make as close an approximation as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The estimate must have a reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  However, section 274 supersedes the doctrine of Cohan v. Commissioner, supra, sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), and requires strict substantiation of expenses for travel, meals and entertainment, and gifts, and with respect to any listed property as defined in section 280F(d)(4). Sec. 274(d).  Listed property includes any passenger automobile or any other property used as a means of transportation.  Sec. 280F(d)(4)(A)(i) and (ii).

A taxpayer is required by section 274(d) to substantiate a claimed expense by adequate records or by sufficient evidence corroborating the taxpayer's own statement establishing the amount, time, place, and business purpose of the expense.  Sec. 274(d).  Even if such an expense would otherwise be deductible, the deduction may still be denied if there is insufficient

substantiation to support it.  Sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

A.    Vehicle-Related Expenses

On Schedule C, petitioner claimed both a section 179 expense deduction for $7,000 and business-related vehicle expenses of $4,182 on the same vehicle.  It is unclear from the record whether petitioner used actual expenses or the standard mileage rate to calculate the claimed deduction of $4,182.  No evidence was introduced to substantiate any actual expenses incurred and the number of business miles claimed on Schedule C multiplied by the 1998 standard mileage rate is not equal to the amount of the claimed deduction.[3]

Actual expenses related to the business use of a vehicle are deductible under section 274, if substantiated.  If actual expenses were used to determine the business-related vehicle expenses claimed, petitioner, having failed to substantiate any such expense, is not entitled to the business-related vehicle expenses claimed.  See sec. 274(d).

Alternatively, a taxpayer may choose to use the business standard mileage rate in lieu of the actual automobile expenses. Nash v. Commissioner, 60 T.C. 503, 520 (1973); Parker v. Commissioner, T.C. Memo. 1993-15; Rev. Proc. 97-58, 1997-2 C.B.

---

[3]    Petitioner reported 12,370 business-related miles and claimed a deduction of $4,182.  The 1998 standard mileage rate of 32.5 cents per mile multiplied by 12,370 miles equals $4,020.25.

587.  However, the business standard mileage rate may not be used to compute deductible expenses if the taxpayer has claimed a section 179 expense deduction on the same vehicle.  Rev. Proc. 97-58, 1997-2 C.B. 587.  Thus, petitioner may not claim deductions on the van for both the section 179 expense and the standard mileage rate.  Assuming petitioner could substantiate entitlement to a deduction for both expenses, petitioner would be limited to either the section 179 expense deduction or the standard mileage rate deduction, but not both.

        i.   <u>Section 179 Expense</u>

Petitioner claimed a section 179 expense deduction of $7,000 on Schedule C for the year at issue.  For the 1998 taxable year, section 179 allows a taxpayer to elect to expense, as a deduction for the year in which the property was placed in service, up to $18,500 of the cost of certain property acquired for use in the active conduct of a trade or business.  Sec. 179(a), (b), (d). "The term 'placed in service' means the time that property is first placed by the taxpayer in a condition or state of readiness and availability for a specifically assigned function, whether for use in a trade or business, for the production of income, in a tax-exempt activity, or in a personal activity."  Sec. 1.179-4(e), Income Tax Regs.

Petitioner claimed on Form 4562, Depreciation and Amortization, that the van was placed in service on January 1,

1998.  However, petitioner presented an invoice at trial for the purchase of the van dated March 6, 1997.  Further, petitioner testified that the van was driven for personal use "part of the time."  Therefore, the only evidence presented on this point indicates that the van was first placed in service in a personal activity in 1997.  The section 179 expense is allowed as a deduction only in the year the property is placed in service.  See sec. 179(a); Hendrix v. Commissioner, T.C. Memo. 1990-221; sec. 1.179-4(e), Income Tax Regs.  Accordingly, petitioner is not entitled to the section 179 expense deduction claimed on the van in 1998.

ii.  Business Standard Mileage Rate Expense

Since we found above that petitioner is not entitled to a section 179 expense deduction, petitioner may use the standard mileage rate to calculate the business-related vehicle expenses on the van, if substantiated.

The business standard mileage rate in lieu of operating and fixed costs allows the taxpayer to deduct an amount determined by multiplying the business standard mileage rate for the year at issue by the number of miles driven for business purposes.  Rev. Proc. 97-58, 1997-2 C.B. 587.  The standard mileage rate for 1998 was 32.5 cents per mile.  Id.

Petitioner reported 12,370 miles driven for business purposes on Schedule C for the year at issue.  Petitioner claimed

a vehicle expense deduction of $4,182.  At trial, petitioner presented no evidence to substantiate the business mileage reported or the vehicle expense claimed.  Petitioner testified that he did not "keep" his business mileage.  Petitioner's witness, Alonza O. C. Sargent, testified that petitioner did maintain a mileage log, but no such log was introduced at trial.

As stated above, section 274 requires strict substantiation for deductions claimed for transportation in a passenger car. Petitioner is required to provide a mileage log or other corroborative evidence sufficient to establish the amount, time, place, and business purpose of the expense.  Sec. 274(d).  At trial, petitioner failed to provide any corroborating evidence whatsoever to satisfy the section 274 substantiation requirements.

Based on a partial mileage log reviewed by respondent during an examination prior to trial, respondent conceded that petitioner was entitled to 5,742 business miles.[4]  Applying the standard mileage rate for 1998, respondent concedes that petitioner is entitled to a vehicle expense deduction of $1,866 for the year at issue.  Although petitioner did not substantiate entitlement to a deduction in any amount at trial, we shall not disturb the respondent's concession.  Accordingly, petitioner is

---

[4]     The partial mileage log was not introduced at trial.

entitled to a vehicle expense deduction of $1,866 for the year at issue.

B.  Production and Management Fees

Petitioner claimed a business expense deduction for production and management fees in the amount of $999.20 on Schedule C for the year at issue.  At trial, petitioner presented documentation substantiating $486.70 of the amount claimed.  We are satisfied that the substantiated items are ordinary and necessary business expenses directly connected with petitioner's Schedule C business, as required under section 162(a) and the regulations thereunder.

Petitioner presented absolutely no evidence, either documentary or testimonial, to substantiate the additional $512.50 of expenses claimed.  Petitioner is not entitled to a deduction for business expenses that are completely unsubstantiated.  Ronnen v. Commissioner, 90 T.C. 74, 102 (1988).

Therefore, petitioner is entitled to a Schedule C business expense deduction only for production and management fees in the amount of $486.70 for the year at issue.

C.  Music Educator and Professional Convention Expense

Petitioner claimed a business expense deduction for music educator and professional convention expenses in the amount of $1,381.44 on Schedule C for the year at issue.  After respondent's concession allowing a deduction of $1,047.49 for

expenses related to the New York City Convention, only $333.95 of the total claimed expense remains at issue. The majority of the remaining expenses was incurred in connection with two other conventions attended by petitioner during 1998.

In February 1998, petitioner attended the Texas Music Educators Association Convention in San Antonio, Texas. Petitioner claimed business expenses relating to the convention in the amount of $113.10.

In July 1998, petitioner attended the Texas Bandmasters Association Convention in San Antonio, Texas. Petitioner claimed business expenses relating to the convention in the amount of $155.79.

Respondent asserts that the expenses incurred with respect to both San Antonio, Texas, conventions relate to petitioner's employment as an assistant band director and not to PK Production.

At trial, petitioner testified that the claimed expenses relating to the conventions pertained to both PK Production and his employment as a band educator. However, petitioner failed to allocate the expenses accordingly, claiming the expenses entirely as business expenses on Schedule C.

Petitioner further testified that the conventions were related to his Schedule C business because the conventions (1) offered seminars and workshops that benefited petitioner as a

musician, (2) were attended by other bands' members who shared "some different techniques and various things \*\*\* that would benefit any professional musician", and (3) provided exhibits featuring manufacturers and distributors selling professional equipment.

While petitioner may have attended seminars and engaged in conversations with various individuals about techniques and equipment at the conventions, we believe that these activities are not "directly connected with or pertaining to" petitioner's Schedule C business. Sec. 1.162-1(a), Income Tax Regs. The fact that petitioner may have derived some incidental or indirect benefit to his business by attending the conventions is not sufficient to satisfy the requirements of section 162(a). See Henry v. Commissioner, 36 T.C. 879, 884 (1961).

The registration forms presented by petitioner at trial clearly establish that the conventions were organized by educational associations for the benefit of music educators.

The Texas Music Educators Association Convention Membership Application requested information pertaining to the applicant's teaching division and level. On the application, petitioner selected that he taught band at the middle school/junior high school level.

Petitioner completed the Texas Bandmasters Association Convention Registration Form indicating that he was affiliated

with the Oak Village Middle School.  Further, petitioner only selected the middle school option when asked to select the appropriate options that applied to the applicant.

Petitioner unequivocally completed both applications as an educator, making no mention whatsoever of PK Production. Petitioner testified that he had a choice of associating himself with the school or PK Production when completing the applications, yet petitioner chose to affiliate himself with the school on both occasions.

It appears to the Court that from the evidence presented that petitioner attended both San Antonio, Texas, conventions primarily in his capacity as an assistant band director.  The record is clear that petitioner has failed to establish that the expenses associated with the San Antonio, Texas, conventions claimed on Schedule C were ordinary and necessary expenses directly related to PK Production.  See sec. 162(a); sec. 1.162-1(a), Income Tax Regs.

Petitioner presented absolutely no evidence, either documentary or testimonial, to substantiate the additional $65.06 of expenses claimed as music educator and professional convention expenses.  Petitioner is not entitled to a deduction for business expenses that are completely unsubstantiated.  Ronnen v. Commissioner, supra.

Therefore, petitioner is not entitled to a Schedule C

deduction in any amount for the $333.95 of expense claimed as music educator and professional convention expenses.

However, since we found that petitioner incurred convention expenses of $268.89 relating to his employment as an assistant band director, we must determine whether these expenses are deductible as unreimbursed employee expenses on Schedule A, Itemized Deductions, subject to the 2-percent floor under section 67(a).

A taxpayer is not allowed an unreimbursed employee expense deduction if the employer maintains a reimbursement plan and the employee fails to seek reimbursement for work-related expenses. Leamy v. Commissioner, 85 T.C. 798, 810 (1985).

There is absolutely nothing in the record to indicate whether petitioner's employer maintained a reimbursement plan in the year at issue, nor has petitioner provided any evidence to establish that he sought reimbursement for the convention expenses. Accordingly, petitioner is not entitled to claim unreimbursed employee expenses on Schedule A for the expenses related to either of the San Antonio, Texas, conventions.[5]

---

[5]    Assuming, arguendo, that petitioner was entitled to claim unreimbursed employee expenses of $268.89 on Schedule A, petitioner would not be entitled to a deduction because the total unreimbursed employee expenses are not greater than 2 percent of the recomputed adjusted gross income, as required under sec. 67(a).

D.  Result of Schedule C Adjustments Above

Consistent with the findings above, we have recalculated petitioner's Schedule C loss from PK Production.  Petitioner is entitled to a loss of $1,748.19 on Schedule C for the year at issue.  Petitioner's adjusted gross income is also recomputed to reflect this amount.  Petitioner's recomputed adjusted gross income is $28,919.35 for the year at issue.

2.  Casualty Loss Deduction

Section 165(a) allows a taxpayer to deduct any loss sustained during the taxable year and not compensated for by insurance or otherwise.  As relevant here, section 165(c)(3) allows a deduction to an individual for loss of "property not connected with a trade or business or a transaction entered into for profit, if such loss arises from fire, storm, shipwreck, or other casualty".

Pursuant to section 165(h), personal casualty losses described under section 165(c)(3) are deductible only to the extent that the loss exceeds $100 and 10 percent of the taxpayer's adjusted gross income.  Moreover, such losses are deductible as itemized deductions on Schedule A of the taxpayer's return.

Pursuant to section 1.165-7(b)(1), Income Tax Regs., in the case of property partially destroyed by casualty, the loss deductible for purposes of section 165(a) is the difference

between the fair market value of the property immediately before the casualty and the fair market value of the property immediately after the casualty, with the deductible amount not to exceed the adjusted basis of the property (fair market value approach).

To establish the amount of the loss, the relevant fair market values of the property "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. The appraisal must be conducted in a manner to ensure that any casualty loss deduction "be limited to the actual loss resulting from damage to the property." Id.

Section 1.165-7(a)(2)(ii), Income Tax Regs., provides that the cost of repairs to the damaged property is acceptable as evidence of the loss of value to the property (cost of repairs approach). In order to use this alternative approach, the taxpayer must show: (1) The repairs are necessary to restore the property to its condition immediately before the casualty; (2) the amount spent for such repairs is not excessive; (3) the repairs do not care for more than the damage suffered; and (4) the value of the property after the repairs does not as a result of the repairs exceed its value immediately before the casualty. Id.

For the year at issue, petitioner claimed a casualty loss deduction of $5,151.19 on Schedule A. Petitioner determined the

casualty loss amount on Form 4684, Casualties and Thefts, applying the fair market value approach.  On Form 4684, petitioner reported the fair market value of the property before and after the casualty to be $60,000 and $52,870, respectively. The $7,130 difference in the fair market values reported was first reduced by $100, then further reduced by $1,888.81, 10 percent of the adjusted gross income shown on the return. Thereby, petitioner computed a casualty loss of $5,151.19.  No insurance reimbursement was reported on the Form 4684.

A.  <u>Fair Market Value Approach</u>

At trial, petitioner offered no evidence to substantiate the fair market values reported on Form 4684.  Petitioner did present a Uniform Residential Appraisal Report (report), which estimated the market value of petitioner's residence, as of October 10, 1998, to be $53,000.  The report makes no mention of the damage claimed by petitioner, nor states that the appraised amount was based on a value before or after the date of the storm.  Because the appraised value was determined as of October 10, 1998, approximately 1 month after the storm and before any repairs were made, we believe the $53,000 figure represents the fair market value of the property taking into consideration any damage resulting from the storm.[6]  Since no evidence of the fair market

_____

[6]    The Uniform Residential Appraisal Report states that Oct. 10, 1998, was the date of inspection of the property.

value of the property immediately prior to the storm was presented at trial, petitioner has failed to provide the information necessary to apply the fair market value approach. Thus, petitioner is not entitled to the $5,151.19 casualty loss deduction claimed applying the fair market value approach.

B.   Cost of Repairs Approach

At trial, petitioner presented many documents in his attempt to substantiate the casualty loss deduction applying the cost of repairs approach.  The documents were stipulated by the parties and are part of the record.  Petitioner presented a copy of:  (1) The insurance settlement claim from State Farm in the amount of $857.12; (2) a contract with Carl B. Adams to install a new roof and replace rotten decking for $1,500; (3) three receipts from Carl B. Adams acknowledging payment of $1,500; (4) a receipt to haul and dump roofing materials for $125; (5) two receipts from Commercial Sand totaling $50; (6) three receipts from Builders Square Store # 1409 totaling $123.64; (7) a receipt from Olshan Lumber Company for $1,070.11; and (8) a credit invoice from Olshan Lumber Company for items returned in the amount of $280.74.  Accordingly, petitioner presented documentation totaling $2,588.01 to replace his roof and received $857.12 in insurance proceeds.  Thus, petitioner's net out-of-pocket expense was $1,730.88 (net expense).

Petitioner testified that he spent "over $4,000" to repair

the damage to his residence, but could not remember the exact amount. While we are permitted to estimate the amount of a deduction under certain circumstances, there must be evidence in the record upon which to base our decision. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Petitioner did not corroborate his testimony with any evidence whatsoever to establish the $4,000 figure. It is well settled that we are not required to accept a taxpayer's self-serving testimony in the absence of corroborating evidence. Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992).

Petitioner presented receipts totaling only $2,588.01 for labor and materials to replace the roof and received $857.12 in insurance proceeds. Therefore, only the $1,730.88 of net expense corroborated by documentary evidence is considered in determining petitioner's casualty loss deduction.

We need not determine on the merits if petitioner has met the four substantiation requirements of section 1.165-7(a)(2)(ii), Income Tax Regs., because petitioner's net expense is less than the amount of the section 165(h) limitations. Applying the section 165(h) limitations, petitioner's net expense of $1,730.88 minus the $100 limitation, or $1,630.88, is far less

than 10 percent of petitioner's recomputed adjusted gross income for the year at issue.[7]

Petitioner has failed to meet the minimum dollar amount threshold required to deduct a casualty loss.[8]  Since petitioner's net expense does not exceed the limitations under section 165(h), petitioner is precluded from deducting any of the net expense incurred.  Accordingly, petitioner is not entitled to a casualty loss deduction applying the cost of repairs approach.

To reflect the foregoing,

Decision will be entered under Rule 155.

---

[7]    We recomputed petitioner's adjusted gross income to be $28,919.35, 10 percent of which is $2,892.  See supra p. 16.

[8]    Assuming, arguendo, that petitioner had corroborated $4,000 of expense, the casualty loss deduction after the sec. 165(h) limitations would be reduced to such a small amount that, when added to the other items claimed on Schedule A, petitioner's total itemized deductions would be less than the standard deduction for the year at issue.