T.C. Summary Opinion 2005-70


UNITED STATES TAX COURT



ROBERT LYLE VERITY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2483-04S.          Filed June 6, 2005.



Robert Lyle Verity, pro se.

Steven I. Josephy, for respondent.



ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to

_____

    [1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 1999 and 2000, the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1999 and 2000 of $13,907 and $6,046, respectively.

After the parties' concessions,[2] the issue for decision is whether petitioner is entitled to deductions claimed on Schedules C, Profit or Loss from Business, for the years in issue, including an additional deduction for lodging of $3,211 not previously claimed on his Schedule C for 2000.  We hold that he is not.

Adjustments to the amount of petitioner's itemized deductions, self-employment tax, self-employment tax deduction, and personal exemption are purely computational matters, the resolution of which is dependent on our disposition of the disputed issues.

---

[2]  Petitioner concedes:  (1) He is not entitled to Schedule C deductions of $9,714 for 1999; (2) he is not entitled to a deduction for travel expenses of $3,324 for 2000; (3) he received unreported Schedule C gross receipts of $7,178 in 1999; (4) he received unreported wages of $11,835 in 1999; (5) he is not entitled to a loss on the sale of his personal residence of $2,044 for 1999; and (6) he is not entitled to a deduction for contributions to a retirement plan of $11,535 for 2000. Respondent concedes that:  (1) Petitioner is entitled to a reduction of capital gain reported on the sale of his personal residence of $815 for 1999; (2) he is entitled to a reduction of gain reported on the sale of a depreciable asset of $1,414 for 2000; and (3) he is entitled to an additional Schedule E deduction for rental expenses of $7,199 for 1999.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Aurora, Colorado.

From 1996 through March 1999, petitioner maintained his personal residence at 5523 Malta Street, Aurora, Colorado (Aurora home). At the end of March 1999, petitioner sold the Aurora home and moved to Australia at the beginning of April 1999. After he sold the Aurora home, petitioner moved his personal belongings into storage.

In addition to the Aurora home, petitioner owned a condominium in a three-story multiunit complex at Beaver Creek West, a resort community in Avon, Colorado, which he purchased on December 6, 1996. The condominium was 1,600 square feet with three bedrooms and three bathrooms. Since purchasing the condominium, petitioner has paid a management company to operate the condominium as a fully furnished short-term daily rental property. Petitioner stayed at the condominium for 5 days at the end of March 1999 between the time he sold the Aurora home and moved to Australia.

Petitioner is a computer consultant. He conducts his work through his self-employed business named Unix 2000, LLC. (Unix).

At all relevant times, petitioner's business address was 2800 S. Syracuse 8-108, Denver, Colorado (Syracuse address), and petitioner maintained a business bank account in Colorado. The nature of petitioner's work is administering large scale computer systems at the software level, which petitioner generally performs from a remote location such as his home. Occasionally, petitioner works on site at various companies setting up the system's hardware.

As part of expanding his business, petitioner desired to develop consulting work with companies in Australia. Petitioner's goal was to set up the system hardware and then contract to administer the machine remotely. To that end, petitioner became involved with Consultants Exchange AustralAsia (CXC), which is an international contractor management company that matches independent contractors with global companies. Through CXC, petitioner entered into an employment contract with Getnere Pty Ltd. (Getnere), an outsourcing agency in Australia. Under this contract, Getnere agreed to employ petitioner on a full-time basis not to exceed 6 months duration, beginning on April 27 through October 27, 1999. Getnere, however, employed petitioner only from April through July 1999. While with Getnere, petitioner was contracted out to IBM and Hewlett Packard.

Petitioner had purchased a round-trip ticket with a fixed return date of or about March 2, 2000. Petitioner obtained a 1-year business visa, which required him to depart Australia every 3 months for a short period.[3] When he arrived in Australia, petitioner opened a bank account at an Australian bank.[4] Petitioner, however, received payment for his consulting services performed in Australia by wire transfer to his business bank account in Colorado.

On April 16, 1999, petitioner and Melissa Lynch (Ms. Lynch) entered into a residential tenancy agreement to rent a furnished three-bedroom apartment located at 31/51 The Crescent Manly in Manly, Sydney, Australia. The term of this lease agreement was 6 months, beginning on April 22 through October 21, 1999.

In June 1999, petitioner switched to another outsourcing agency called e-TECH Pty Ltd. (e-TECH). On June 21, 1999, e-TECH, UNIX (as the subcontractor), and petitioner (as the assigned worker) entered into a subcontractor agreement wherein e-TECH agreed to provide petitioner's services to Hewlett Packard Australia Limited. The term of this agreement was 3 months, beginning on July 5 through October 11, 1999. This contract was renewed and continued until petitioner's departure from Australia

---

[3] For these departures, petitioner went to New Zealand, Fiji, and Singapore.

[4] After returning to the United States, petitioner did not close this account.

in March 2000.  While with e-TECH, petitioner was contracted out to Hewlett Packard and Johnson & Johnson Medical.

On August 21, 1999, petitioner and Ms. Lynch entered into a residential tenancy agreement to rent a residence at 5/13 George Street, Manly.  The term of this lease agreement was 6 months, beginning on September 1, 1999, through March 2, 2000.

On March 2, 2000, petitioner returned to the United States and stayed at the condominium for 11 days.[5]  Thereafter, he moved to an apartment in Denver, Colorado, to work on another consulting contract.

During 1999 and 2000, petitioner spent approximately 330 consecutive days outside of the United States.  Petitioner returned to Australia in September and October 2000 to perform additional consulting services for Australian companies.

Petitioner filed Forms 1040, U.S. Individual Income Tax Return, for each of the years in issue.  On each return, petitioner listed his address as the Syracuse address. Petitioner attached to each return, inter alia, a Schedule C and a Schedule E, Supplemental Income and Loss.

On each Schedule C, petitioner identified his business name as Unix, his principal business or profession as "Admin & Co" for

---

[5]  In addition, petitioner stayed at the condominium as follows:  (1) 40 days in 2003; (2) 19 days in 2002; (3) 14 days in 2001; (4) 69 days in 1998; (5) 18 days in 1997; and (6) during Christmas in 1996.

1999 and as "computer programming" for 2000, and his business activity code as 541510, signifying computer systems design and related services. On each Schedule C, petitioner listed his business address as the Syracuse address. Schedules C reflected expenses of $11,712 and $152,416 for 1999 and 2000, respectively. Expenses consisted of automobile expenses, depreciation, insurance, other interest, legal and professional services, office expense, rent or lease of vehicles, machinery and equipment, supplies, taxes and licenses, travel, meals and entertainment, and other expenses. "Other expenses" included bank charges, telephone, other business telephone, continuing education and training expenses, contract labor, fees, Internet charges, dues and subscriptions, storage costs, Web site maintenance, parking fees, postage, tolls, taxis, lodging, and miscellaneous.

On each Schedule E, petitioner identified the Avon condominium as rental real estate property. Schedules E reflected expenses of $23,900 and $12,567 for 1999 and 2000, respectively. The expenses consisted of management fees, mortgage interest, repairs, supplies, taxes, and utilities.

In the notice of deficiency, respondent disallowed, as relevant herein, the following:

| Expense | 1999 | 2000 |
|---|---|---|
| Lodging | $17,523 | $195 |
| Meals and entertainment | 5,151 | 554 |
| Miscellaneous | 2,245 | -0- |
| Car expenses | -0- | 1,026 |
| Car lease | -0- | 437 |
| Total | 24,919 | 2,212 |

## Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.[6]  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving he or she is entitled to any deduction claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra.  This includes the burden of substantiation.[7]  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 162(a)(2) allows a taxpayer to deduct traveling expenses, including amounts expended for meals and lodging, that are paid or incurred while "away from home" in the pursuit of a

_____

[6]  We render a decision on the merits based on the preponderance of the evidence, without regard to the burden of proof under sec. 7491(a).

[7]  For 1999, respondent determined that petitioner substantiated payment of the deductions at issue.  For 2000, we conclude on the basis of the record that petitioner substantiated all of the deductions claimed.  Accordingly, substantiation is not in issue.

trade or business.  For purposes of section 162(a)(2), a taxpayer shall not be treated as being temporarily away from home during any period of employment if such period exceeds 1 year.  Sec. 162(a).  Section 262(a), however, disallows deductions for personal, living, or family expenses.  There are three criteria for determining whether travel expenses are deductible:  (1) The expense must be reasonable and necessary; (2) they must be incurred "while away from home"; and (3) they must be incurred in pursuit of a trade or business.  Commissioner v. Flowers, 326 U.S. 465, 470 (1946).

For income tax purposes, the term "home" in section 162(a)(2) means a taxpayer's "tax home"; i.e., the taxpayer's principal place of employment and not where the taxpayer's personal residence is located, if different from the principal place of employment.[8]  Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968).  An exception to this rule exists when a taxpayer accepts employment away from the taxpayer's personal residence and such employment is temporary rather than indefinite.

---

[8]  The vocational "tax home" concept was first construed by this Court in Bixler v. Commissioner, 5 B.T.A. 1181, 1184 (1927), and has been steadfastly upheld by this Court.  See, e.g., Horton v. Commissioner, 86 T.C. 589 (1986); Leamy v. Commissioner, 85 T.C. 798 (1985); Foote v. Commissioner, 67 T.C. 1 (1976); Kroll v. Commissioner, 49 T.C. 557 (1968).

Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  Under this exception, a taxpayer's "tax home" becomes the vicinity of the taxpayer's primary personal residence in a "real and substantial sense".  Id.; see Deamer v. Commissioner, T.C. Memo. 1984-63, affd. 752 F.2d 337 (8th Cir. 1985); Rohr v. Commissioner, T.C. Memo. 1982-117.  Employment is considered temporary only if its termination can be foreseen within a reasonably short period of time, but such temporary employment may become indefinite if it is expected to last for a substantial, an indefinite, or an indeterminate duration, or due to changed circumstances or the passage of time.  Norwood v. Commissioner, 66 T.C. 467, 469-470 (1976); Kroll v. Commissioner, supra at 562.  Whether a job is temporary or indefinite depends on the facts and circumstances of each case.  Peurifoy v. Commissioner, supra at 60-61.

The purpose of the deduction for "away from home" expenses is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses."  Kroll v. Commissioner, surpa at 562.  An obvious precondition to a taxpayer's being away from home is that the taxpayer have a home.  See Bochner v. Commissioner, 67 T.C. 824, 828 (1977).  This means that the taxpayer must have incurred substantial continuing living expenses at a permanent place of residence and must also have paid the expenses incurred in

connection with his or her business while on the road.  See Brandl v. Commissioner, 513 F.2d 697, 699 (6th Cir. 1975), affg. T.C. Memo. 1974-160; see also James v. United States, 308 F.2d 204 (9th Cir. 1962); Bochner v. Commissioner, supra.  Where the taxpayer maintains two residences for his own convenience, however, such cost would be considered personal in nature and not deductible.  Sec. 262; Commissioner v. Flowers, supra at 474.  In the event that a taxpayer does not have a fixed personal residence, the taxpayer is considered an "itinerant", and the taxpayer's tax home follows the taxpayer to each place of employment.  See Michel v. Commissioner, 629 F.2d 1071, 1073-1074 (5th Cir. 1980), affg. T.C. Memo. 1977-345.

A.    Temporary Versus Indefinite Employment

We first decide whether petitioner's employment in Australia was temporary or indefinite.  Petitioner contends that he intended to work in Australia only temporarily to establish business contacts such that he could continue consulting for such companies remotely from Colorado.  In contrast, respondent contends that petitioner's employment in Australia was indeterminate because petitioner anticipated staying in Australia beyond 1 year, if he had work.  We disagree with respondent.

Petitioner purchased a round-trip ticket to Australia good for only 1 year, which he, in fact, used to return to the United States within approximately 11 months.  In addition, he entered

into short-term employment contracts; the Getnere contract was only for 3 months and the e-TECH contract was initially for 3 months, but it was extended for an additional 5 months. Petitioner also entered into short-term lease agreements for 6 month durations. Respondent, however, argues that petitioner would have stayed in Australia if he had work.  Admittedly, petitioner testified at trial that his contracts could be extended and that if he had additional work, he could have obtained another visa to stay in Australia.  Notwithstanding, the fact of the matter is that petitioner's e-TECH contract was not extended, he did not receive additional work, and he immediately returned to the United States in less than 1 year.  In light of the nature of his business and the foreign location where he performed his work, termination of petitioner's employment could be foreseen within a reasonably short period of time. Accordingly, we conclude that petitioner's employment in Australia was temporary under the facts and circumstances of this case.

B.    Tax Home

We next decide where petitioner's tax home was for the relevant period.  Petitioner contends that his tax home was his condominium in Avon, Colorado.  In support of his contention, petitioner relies on the following factual predicate:  (1) Petitioner lived in the condominium before departing to

Australia; (2) he kept all his personal belongings in storage in Colorado; (3) he maintained Unix's "business headquarters" and bank account in Colorado, which indicate his personal desire to return to Colorado; and (4) he lived in the condominium when he returned from Australia.  On the other hand, respondent contends that Australia was petitioner's tax home.  We agree with respondent.

There is ample evidence in the record to support the conclusion that petitioner's condominium in Avon, Colorado, did not constitute his primary personal residence.  Petitioner lived in the condominium for only 5 days before departing the United States in 1999 and only 11 days after he returned from Australia in 2000.  It appears that petitioner resided in the condominium in 1999 for 5 days because it was between the time that he sold the Aurora home, in which he resided for approximately 3 years before departing the United States, and his departure to Australia.  In fact, petitioner did not move any of his personal belongings into the condominium, but rather placed them in storage.[9]  In 2000, petitioner resided in the condominium between the time he returned from Australia and moved into an apartment in Denver, Colorado.  Living temporarily in the condominium for 5

---

[9] Petitioner testified at trial that he kept some personal belongings in the condominium.  We note, however, that petitioner maintained the condominium as a fully-furnished rental property. As such, petitioner did not move his personal belongings from the Aurora home to the condominium before relocating to Australia.

and 11 days in 1999 and 2000, respectively, hardly constitutes classifying it as his primary personal residence.

At trial, petitioner provided conflicting testimony about his intent with regard to the condominium. First, petitioner testified that the condominium was his "second home" when he owned the Aurora home, then it was his "home" after he sold the Aurora home, and, finally, it was his "retirement home". Thus, we are unable to conclude that the condominium was his home in the real and substantial sense before he left for Australia, during his stay in Australia, and after his return from Australia.

Petitioner argues, however, that he paid living expenses for both the condominium and the apartments in Australia during the relevant time period. We decline to find that the expenses petitioner paid with regard to the condominium constitute duplicate living expenses. At all times, the condominium has always been petitioner's rental property, which he reports as such on Schedule E. Petitioner continued to pay the same management fees since he has owned the condominium, including during the time he resided in the Aurora home and in Australia. These expenses constitute investment expenses in rental property rather than "substantial continuing living expenses" for purposes of section 162(a)(2). Simply put, petitioner's labeling of the

condominium as his "home" does not satisfy the requirements of a tax home within the meaning of section 162(a)(2).

On the basis of the record, petitioner was an itinerant for purposes of section 162(a)(2). Therefore, his place of residence follows him to his place of employment. See <u>Michel v. Commissioner</u>, 629 F.2d at 1073-1074. Although petitioner may have maintained his "business headquarters" in Colorado and had all his compensation wired to his business bank account in Colorado, his principal place of employment was in Australia. Indeed, all of the expenses at issue were incurred for petitioner's consulting services performed in Australia, not in Colorado. Accordingly, we conclude that petitioner's tax home, for purposes of section 162(a)(2) for the relevant time period, was Australia. We thus sustain respondent's determination.

### Conclusion

We have considered all of the other arguments made by petitioner, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well as the parties' concessions,

Decision will be entered

under Rule 155.
